[No. 782.  Decided June 3, 1893.]

JOHN Y. ARNOTT AND CHARLES FERGUSON, *Respondents*,
v. THE CITY OF SPOKANE, *Appellant*.

MUNICIPAL CORPORATIONS — ILLEGAL CONTRACTS — RATIFICATION
— DISCOUNTING WARRANTS — BREACH OF CONTRACT — MEASURE
OF DAMAGES.

Where the charter of a city provides against liability on any contract for the payment of any sum exceeding fifty dollars, unless the same is authorized by ordinance and made in writing and signed by the clerk or an authorized agent, the city cannot be rendered liable by the verbal agreement of the mayor and a council committee to pay certain sums exceeding fifty dollars, in addition to those duly authorized by the council; nor can the city, by its conduct, acquiesce in and ratify the acts of its officers, so as to make such verbal contract valid and binding retroactively.

A municipal corporation has no authority to make a contract to discount its own warrants; and the fact that the city has paid a portion of the discount on its warrants in accordance with an agreement of its officers, will not estop it from asserting the illegality of such a contract.

Where there is a breach of a contract to pay cash when due for certain work, the only damages recoverable, when the injured party proceeds with the work to completion, is interest on the money from the time of the default.

Wherever a person enters into a contract with an agent of a municipal corporation, he must at his peril ascertain the extent of such agent's authority, and, if he fails to do so, he alone must suffer the consequences.

*Appeal from Superior Court, Spokane County.*

*P. F. Quinn*, for appellant.

*Feighan, Wells & Herman*, for respondents.

The opinion of the court was delivered by

ANDERS, J.— On the 17th day of November, 1890, the respondents and the appellant entered into a written contract, the material portion of which is as follows:

"This agreement, made this 17th day of November, A. D. 1890, between John Y. Arnott and Charles Ferguson and . . . , copartners, doing business under the firm name of John Y. Arnott & Company, of Spokane county, State of Washington, party of the first part, and the city of Spokane Falls, by C. F. Clough, mayor, party of the second part, witnesseth that the said party of the first part, in consideration of the covenants on the part of the said party of the second part hereinafter contained, hereby covenants with the said party of the second part that the said party of the first part will furnish the stone required for the Monroe street bridge piers, according to the plans and specifications, cut and delivered upon the ground where needed, according to the plans and specifications, ready to be set in place; a part of the rock to be delivered within sixty days, and completed within sixty days. Said stone shall be as per sample furnished the city council this 15th day of November, free from loose seams or imperfections of any kind, and subject to the inspection and acceptance of the city engineer. All stone must be dressed so that their top surfaces shall be parallel with their beds, and require no tooling after the stones are set. All coping stones shall be cut according to the plans furnished by the engineer, and shall have all exposed surfaces bush hammered, and comply with all other requirements of the engineer, as set forth in the plans and specifications now on file in the city clerk's office, which are hereby made a part of this contract, as far as said specifications refer to the stone to be used in the piers of said Monroe street bridge. And the said city of Spokane Falls, party of the second part, in consideration of the covenants on the part of the said party of the first part hereinbefore contained, agrees to and with the said party of the first part that the said party of the second part will pay to the said party of the first part, or his order, $1.32 for each and every cubic foot of cut stone so delivered, to be measured in the pier, according to the approximate estimate made on Monday of each week of material delivered prior thereto. Said estimates to be made by the city engineer, and to be paid in cash immediately after said estimates have been reported to the city council, which is to be done at the next meeting after said estimates. In witness whereof," etc.

Immediately upon the execution of this contract, the respondents commenced to furnish stone, and to cut the same, and continued so to do without interruption or delay until some time in January, 1891. Estimates were made and given to the respondents for material furnished for the first four weeks, and cash payments were made thereon according to the stipulations of the contract. But, after the fourth estimate, the appellant failed to make payment on estimates when due. Work was continued after default in payments for about two weeks, and then discontinued or "shut down" by the respondents. This was about the 10th of January, 1891, and the suspension of work was continued for about the period of fourteen days. During this time no stonecutters were at work, but the respondents continued to receive stone at their yard from the party or parties who had contracted to deliver it to them, and employed laborers to assist in unloading the same. On or about January 10, 1891, a verbal arrangement was made between the respondents and the bridge committee and mayor of the city whereby the respondents agreed thereafter to take city warrants, which were selling at a discount, in lieu of cash, at the rate of 90 per cent. of their par value; and the bridge committee and mayor promised that the appellant would pay respondents the discount of 10 per cent. in cash on all warrants so received by them. The respondents thereupon resumed cutting and delivering stone, for which weekly estimates were made, and warrants were given in payment thereof in "blocks" of $500 each. Some time in February the respondents again suspended work, for the alleged reason that they could not sell their warrants, and were without the means wherewith to pay their employés; but, about a month afterwards, they proceeded with their work, and completed it about the 1st of May, 1891.

It seems to be fairly deducible from the evidence that

the respondents, before they resumed work after their first "shut down," notified the bridge and street committee and the acting mayor that they would hold the city liable for all extra cost of labor and transportation resulting from the failure to pay cash according to the terms of the contract, and the consequent suspension of their work, and that the committee and mayor tacitly, if not directly, agreed that the city would be responsible for the same. The respondents furnished, at the request of the city engineer, 332 feet of rock, which does not appear to have been called for by the original contract, but which was used in constructing the piers.   They also cut down one pier some four inches, which work was occasioned by a mistake in the original specifications.   Before the work was completed the roads became very muddy, and the respondents claim they were compelled to pay a much larger sum for hauling rock thereafter than before, and that, by reason of their not being able to finish their work within the sixty days specified in the contract, owing to the fault of the appellant in not paying the weekly estimates in cash, they were obliged to dress a considerable portion of the stone after it had become affected by frost to such an extent that the cost of cutting was enhanced about 50 per cent.   They also claim that, by reason of the accumulation of stone during the time work was first suspended, a portion of it was necessarily deposited and dressed outside of the shed prepared for the cutters to work in, and that they were compelled to pay the extra sum of 50 cents per day to each laborer who worked outside of the shed.  The total estimates furnished to the respondents (including $320 for a derrick sold to the appellant, and, as it appears, the extra stone furnished at the original contract price) amounted to $26,-974.40.  The respondents admit in their testimony that they received in cash and warrants reckoned at their face value that sum, less $62.  About $20,000 in warrants was received

from the city altogether, and the city claims that $1,100 cash, as discount, was received by respondents in accordance with the verbal agreement above mentioned, while the respondents claim that but $850 was so received by them. After the respondents delivered all the stone required by the terms of their agreement, they presented to the city a claim for extra work and materials, and for damages for breach of their contract, and also for a balance due, amounting in all to between $5,000 and $6,000. The city council refused to allow the claim, or any part thereof, whereupon the respondents instituted this action to recover the amount thereof. From a judgment in favor of the plaintiffs, the defendant appealed.

During the course of the trial, the court admitted certain testimony tending to show the verbal agreement above mentioned in regard to the payment of extra cost of labor, transportation of materials, etc., and also testimony as to the agreement to discount the warrants of the city. The appellant insists that the ruling of the court in this regard was erroneous, and contrary to the express terms of the statute. Sec. 85 of the charter of the city, which was then in force, provides that—

"The city of Spokane Falls is not bound by any contract or in any way liable thereon, unless the same is authorized by a city ordinance, and made in writing and, by order of the council, signed by the clerk or some other person authorized by the city; but an ordinance or resolution may authorize any officer or agent of the city, naming him, to bind the city without a contract in writing for the payment of any sum not exceeding fifty dollars." Laws 1885-6, p. 321.

The contention of the appellant is, that neither the bridge committee nor the mayor had any right or power to bind the city by any agreement or contract not made in writing, and signed by some person duly authorized to execute it. Upon this point we have no doubt of the correctness of ap-

pellant's position.   While a municipal corporation would, unless restricted by law, have a right to make contracts in reference to its corporate business in any manner it might deem proper, yet, where the mode of contracting is ex- pressly provided by law, no other mode can be adopted which will bind the corporation.   This principle results from the fact that municipal corporations derive all their powers from their charters. 1 Dill. Mun. Corp. (4th ed.) 449 (373); *Zottman v. San Francisco*, 20 Cal. 97; *McCoy v. Briant*, 53 Cal. 247; *McDonald v. Mayor*, 68 N. Y. 23; *Bladen v. Philadelphia*, 60 Pa. St. 464; *Allen v. Galves- ton*, 51 Tex. 302; *City of Bryan v. Page*, 51 Tex. 532; *Head v. Providence Insurance Co.*, 2 Cranch, 150.   In the case last cited, Chief Justice MARSHALL, in speaking of the subject, said:

"The act of incorporation is to them an enabling act; it gives them all the power they possess; it enables them to contract, and, when it prescribes to them a mode of con- tracting, they must observe that mode, or the instrument no more creates a contract than if the body had never been incorporated."

In fact, so far as we have observed, the authorities are practically uniform on this question.   Nor do the respond- ents appear to seriously dispute this proposition of law, but they contend that the city, by its conduct, acquiesced in and ratified the acts of its officers.   The argument is that the city might have originally made the same agree- ment that its officers made, and hence had the power to ratify it, and must be held to have done so in this instance. But the difficulty arises, not from a want of power in the city to make contracts, but from the restriction imposed upon it by the legislature with reference to the mode of exercising such power.   The power to ratify a particular contract presupposes the power to make it in the first in- stance; and, if it is such that it could not be made origi-

nally except in a certain prescribed mode, where that mode is disregarded the power to ratify does not exist. A contract which is invalid because not authorized by law cannot be made valid and binding retroactively by any subsequent action of the corporate body, and a liability be thereby fastened upon the corporation. *Zottman v. San Francisco, supra; Nicolson Pavement Co. v. Painter*, 35 Cal. 704; *McPherson v. Foster*, 43 Iowa, 48; *City of Bryan v. Page, supra.* As the city, by the terms of its charter, could not be made liable in any contract, by whomsoever made, which was not in writing or authorized by ordinance, it follows that the learned judge erred in admitting any testimony for the purpose of proving the terms of a verbal agreement. Such testimony was immaterial, as such a contract, if proved, would be of no avail whatever. *Hague v. Philadelphia,* 48 Pa. St. 527.

While conceding the power of the appellant to make the written contract above set forth, we are of the opinion that it had no authority in law to discount its own warrants. Such a proceeding is manifestly beyond the scope of legitimate corporate power, and a practice of that character might lead to ruinous results. City warrants are evidences of indebtedness or promises to pay, and are payable with interest prescribed by law, and the corporation cannot cast upon the taxpayers any further burden in respect thereto, and the courts have uniformly, so far as we are advised, disapproved every effort to do so. *Clark v. Des Moines*, 19 Iowa, 199; *Foster v. Coleman*, 10 Cal. 279; *Bauer v. Franklin Co.*, 51 Mo. 205; *State v. Wilson*, 71 Tex. 291 (9 S. W. Rep. 155).

It is contended, however, on behalf of the respondents, that, inasmuch as the city had power to borrow money, it had the power to discount its warrants as a means of raising money, as a necessary implied power. But we are unable to agree with counsel in this view of the law. The

power to borrow money was expressly conferred upon the city by its charter, but it was also provided that the amount borrowed, which was limited to a certain sum, should be evidenced by warrants drawing interest at a fixed rate per cent., and therefore nothing was left to implication. Everything pertaining to the power granted was clearly and unmistakably expressed by the legislature.

It is also insisted that the city, by paying a portion of the discount on its warrants in accordance with the agreement of its officers, ratified such agreement, and is now estopped from asserting the contrary. But we are constrained to take a different view of the law, and to hold that an illegal contract is incapable of being ratified; and the fact that counsel for appellant, in the court below, admitted that the contract was thus ratified, cannot avail the respondents here, for that question can only be determined by reference to the law. What the law will not sanction as a contract cannot be made such by the admissions of a party or his counsel. *Polk Co. Sav. Bank v. State*, 69 Iowa, 24 (28 N. W. Rep. 416). And, moreover, as we understand the evidence upon this point, the money actually paid to the respondents as discount was donated for the purpose by private individuals and corporations, and was, therefore, strictly speaking, not disbursed by the city at all, although a portion of it may have passed through the hands of its treasurer. From these considerations it follows that it was error to charge the jury to the effect that the respondents were entitled to recover the difference between 10 per cent. of the face value of the warrants received by them and the amount received on account of discount.

The appellant complains of the instructions of the court given to the jury as to the measure of damages for breach of the contract in question. In the sixth instruction, the jury were advised that if the plaintiffs were compelled, by reason of bad roads and the extra price they had to pay

for the cutting of the stone, to pay an additional amount over and above the price they would have been compelled to pay for the performance of the same services during the time designated in the contract (sixty days from the execution thereof), then they were entitled to recover the additional amount for such hauling and extra expenditures for cutting the stone, if the jury found that such were the natural results of the breach of the contract, in not paying cash as stipulated in the contract. The point is made that the only damages recoverable for a failure to pay cash when due is interest on the money from the time of the default, and we think it is well taken. That this is the general rule of law is shown by the following cases: *Loudon v. Taxing District*, 104 U. S. 771; *Insurance Co. v. Piaggio*, 16 Wall. 378. Many cases are cited by the respondents to sustain their contention that damages resulting from delay caused by breach of contract may be recovered by the party not in fault, but we think there is a clear distinction between those cases and the one at bar. In neither of the cases cited was the delay caused by a mere failure to pay money, but was occasioned by a notice or request to suspend operations, or by a failure to furnish necessary and indispensable materials, or to make the necessary preparations for the commencement of the work. When the appellant failed to pay cash when due, according to the terms of the contract, the respondents were at liberty either to stop all work under the contract and sue for the recovery of the resulting damages, or to proceed with the work to completion, notwithstanding the breach. They chose the latter course, and thereby waived such damages as they might have been entitled to if they had adopted the former.

Instruction No. 7 was erroneous for the reasons already given. By it the jury were told that if, by reason of the suspension of cash payment on behalf of the defendant, the

plaintiffs notified the acting mayor and the bridge committee of the defendant that there would be extra work and extra allowances claimed, and that, after such notification was made and claim preferred, the defendant permitted plaintiffs to proceed with their contract without refusing to allow such claim, and received the benefit of said labor and material, the defendant could not take advantage of or question the validity of the agreement, because of its not being in writing, or authorized by ordinance or resolution of the city council.   This instruction is in contravention of the city charter, and is also opposed to the principles laid down in the authorities heretofore cited.

Instruction numbered 8 cannot be sustained, for the reason, already shown, that a contract which the law requires to be in writing cannot be made valid by acquiescence or ratification.

Instructions numbered 9, 10, and 14 are equally faulty. The first two relate to the question of damages, and seem to be based upon the theory that, although the respondents performed their part of the contract after the time therein limited had expired, they were, nevertheless, entitled to recover for the loss of time and extra cost of material occasioned by delay.   The fourteenth instruction charged the jury, among other things, that the plaintiffs were entitled to payment of discount on its warrants, and in that regard was erroneous.

It is argued on behalf of the respondents that it would be unjust and unconscionable to permit the city to repudiate the contract of its officers to the detriment of the respondents; and, if it were a question of mere moral obligation, we would feel inclined to adopt the view of counsel.   But, the question being a purely legal one, its solution must rest upon legal, and not upon moral or ethical, principles.   Wherever a person enters into a contract with an agent of a municipal corporation, he must at his

peril ascertain the extent of such agent's authority, and if he fails to do so, he alone must suffer the consequences. *Zottman v. San Francisco, supra.*

Without further discussion of the questions involved in this case, we conclude that the respondents were, under all the facts and circumstances, only entitled to recover the amount remaining unpaid, if any, according to the terms of their contract, together with legal interest on deferred payments, and the value of the extra stone furnished, which the appellant seems to concede should be paid for, and for which, it contends, it has already paid.

The judgment is reversed, and the cause remanded to the lower court for further proceedings in accordance with this·opinion.

DUNBAR, C. J., and SCOTT, STILES and HOYT, JJ., concur.