[No. 5607. Decided September 28, 1905.]

FRANK H. PAUL, *Appellant*, v. THE CITY OF SEATTLE, *Respondent*.[1]

MUNICIPAL CORPORATIONS — CONTRACTS — VALIDITY — AUTHORITY OF OFFICERS TO EXECUTE — MODE OF EXECUTION PRESCRIBED BY ORDINANCE — RATIFICATION OF INVALID IMPLIED CONTRACT. Under Seattle city charter, art. 4, § 27, providing that no debt or obligation shall be created except by ordinance, and § 28, providing that no officer shall have power to ratify any invalid claim, a contract for commissions for effecting a sale of municipal bonds, made by the city comptroller and the finance committee of the city council, is unenforceable; and the fact that the city had accepted the benefits of the services cannot amount to a ratification.

SAME — CUSTOM — NONCOMPLIANCE WITH REQUIREMENTS. The custom of a city to vest its financial control and management in its comptroller and chairman of the finance committee and to adopt the practice and custom of entering into contracts through such officers without strict compliance with the requirements of the charter, cannot bind the city on a contract not executed or authorized in the manner provided in the charter.

SAME — RATIFICATION OF IMPLIED CONTRACT — TO BE BY ORDINANCE. A municipal contract not made in compliance with the requirements of the provisions of the charter requiring it to be by ordinance cannot be ratified except by ordinance.

SAME — RECEIPT OF BENEFITS — ESTOPPEL. Where a municipal contract is not executed in the manner required by charter, no estoppel arises against the city by reason of the fact that the contract had been fully executed and the city has received the benefits thereof.

Appeal from a judgment of the superior court for King county, Griffin, J., entered December 17, 1904, in favor of

[1]Reported in 82 Pac. 601.

the defendant, dismissing an action on contract, upon sustaining a demurrer to the complaint. Affirmed.

*Geo. F. Aust* and *W. R. Bell,* for appellant.

*William Parmerlee (Scott Calhoun,* of counsel), for respondent.

CROW, J.—This action was brought by appellant to recover a brokerage or commission, claimed by him on the sale of certain municipal bonds. The only question involved is the sufficiency of the complaint which, omitting its formal parts, reads as follows:

"(1)   That at all the times herein mentioned the plaintiff was, and now is, engaged in the business of bond brokerage, buying, selling and negotiating for the sale of bonds and other securities, both municipal and private.

"(2)   That at all times herein mentioned the defendant was, and now is, a municipal corporation of the first class organized and existing under and by virtue of the laws of the state of Washington.

"(3)   That by authority of and pursuant to chapter 85 of the Laws of 1901, passed by the legislature of the state of Washington, the city council of the defendant did, on the 30th day of January, 1902, duly enact an ordinance that a proposal of the plans for the erection and construction of a municipal lighting plant for the city of Seattle, together with a proposal that the city of Seattle issue its bonds in the sum of $590,000 to pay for the acquisition of the necessary property therefor and for the expenses and costs of constructing, erecting and equipping such plant, should be submitted to the qualified voters of the city of Seattle, for their approval or rejection, all as provided in said act of the legislature.

"(4)   That pursuant to said act and said ordinance, the said two proposition were duly submitted to the said qualified voters and both of the same duly authorized by a vote of more than three-fifths of the said qualified voters being in favor thereof.

"(5)   That pursuant to said act, ordinance and ratification, the city comptroller of the city of Seattle duly adver-

tised for bids for the purchase of said bonds, and on the 9th day of May, 1903, in the presence of the corporate authorities and the city treasurer, did duly open all of the bids submitted; that only one bid was submitted and that one was for the bonds at par providing the same bore not less than four and one-half per cent interest, payable semi-annually.

"(6) That the ordinance submitting the said proposition of issuing said bonds and the proposal voted upon by the said voters each provided that the said bonds should be sold so that the city should not pay more than four per cent interest upon the par value of said bonds.

"(7) That by reason of the acts of the officers and servants of the city having in charge the construction of said lighting plant there had been prior to the said 9th day of May, 1903, large sums of money drawn from the general fund for the expenses of preliminary construction of said plant and the acquisition of the necessary right of way, and there had up to said day been devoted to said purpose not less than sixty thousand dollars, all drawn from said general fund with the expectation and purpose to repay the same to said general fund upon the sale of said bonds. That on said day, and for a long time prior thereto, the withdrawal of said sum from said general fund had been keenly felt by the city, and the immediate return of said sum to said general fund was sorely needed; that the said general fund was then practically exhausted; there was urgent need of money in that fund and the only source of obtaining the same was the sale of said bonds and a return to said general fund from the amount realized upon such sale the aforesaid sum of over sixty thousand dollars. That the price of money at said time was advancing instead of cheapening, and the prospects for a sale were bad.

"(8) That for years it had been the custom for the city of Seattle to vest its financial control and management to its comptroller and chairman of its finance committee. That these officers had for years cast upon them and had exercised such general supervision and management, all of which was acquiesced in and recognized by all the departments and officers and agents of the city, and by the general public. That prior to said day the acts of said officers, their prom-

ises, agreements and contracts of employment, when made for the best interests of the city, had always been ratified.

"(9)    That shortly after the said 9th day of May, 1903, the city of Seattle, by its comptroller, acting upon his own official behalf and by instruction of the finance committee and its chairman aforesaid, employed this plaintiff to obtain a purchaser of said bonds.

"(10)    That plaintiff succeeded in obtaining such purchaser, all as employed to do, and the city sold the entire issue of said bonds to such purchaser at par, the bonds bearing interest at three and three-quarters per cent per annum, payable semi-annually; that in the procuring thereof plaintiff did expend much and valuable time and effort, and did expend considerable sums of money in the payment of the necessary hotel and traveling expenses incurred while engaged in his said employment.

"(11)    That without the services of this plaintiff, the defendant could not have sold said bonds at par bearing a less rate of interest than four per cent.

"(12)    That by reason of the services rendered by plaintiff as aforementioned, the defendant was extricated from its then financial straits, its credit was re-established and greatly enhanced, the proposition submitted to the people was made possible of execution, and the said defendant's general fund had restored to it the said sum of sixty thousand dollars which it had previously loaned.

"(13)    That the actual financial saving to the city in interest agreed to be paid on said bonds, to wit, the difference in interest between the amount of said bonds as bearing four per cent, which was the best the city could have done but for the plaintiff's services, and three and three-quarters per cent, the rate borne by the bonds as sold by plaintiff, is $29,500.  That the compound interest upon the semi-annual payments of interest for the time the bonds are to run, will amount to at least the sum of $18,000, and the total saving in interest to the defendant by reason of plaintiff's said services, is at least the sum of $47,500.

"(14)    That the plaintiff occupied many days time in effecting said sale, and during all of said time it was well known to said defendant, its comptroller, the chairman of its finance committee aforesaid, and a majority of the members of its city council, that plaintiff was at defendant's

request engaged in the effort to sell said bonds; that he was expending his time and money in so doing; that his services were of great value; that the same were to be paid for by defendant; that his employment had been and was on behalf of said city through its agents aforesaid; that he had been promised by said agents compensation therefor, and that a majority of the members of the city council had promised that he should be compensated therefor.

"(15)  That the plaintiff rendered said services and expended the said sums under the full belief that he would be compensated therefor; and the defendant, its comptroller, a majority of the finance committee, including its chairman, and a majority of the members of its city council, at all times knowing that he was so believing and that he had been by the said officers promised compensation for his services, did accept said services and continue to accept the same, and did accept the offer of the purchaser procured by plaintiff as aforesaid, at all times knowing that said plaintiff had procured such purchaser under the aforesaid promises and employment.

"(16)  That the defendant refuses and for more than one year has refused to pay the plaintiff anything whatsoever on account of his said claim, and persistently contends that the plaintiff has no legal demand upon it.  That for more than one year it has neglected and refused to act upon his said claim, though often requested so to do, and though the duly verified claim and demand was many months ago presented to it.

"(17)  That the said bonds were sold on the 27th day of July, 1903.

"(18)  That the reasonable value of plaintiff's services as aforesaid is the sum of fourteen thousand seven hundred and fifty dollars.

"(19)  That the defendant will continue to retain all the aforesaid advantages gained by plaintiff's services, will not attempt or offer to reimburse plaintiff, and will, unless restrained by this court, seek to evade liability on the ground that the acts of its agents in the employment of the plaintiff were beyond the powers of such agents.

"(20)  That if the acts of the said agents of the defendant were in excess of their powers, and the defendant is permitted to so urge, then this plaintiff will have no

speedy or adequate remedy at law, or any remedy whatsoever.

"(21)   That the defendant by reason of the aforesaid facts, is estopped to deny the legality of said contract of employment."

To this complaint respondent interposed a general demurrer, which being sustained, appellant declined to plead further, and thereupon judgment was entered in favor of respondent, dismissing the action. From said final judgment, this appeal has been taken.

Appellant contends that the trial court erred in sustaining said demurrer, and also in entering judgment in favor of respondent.   In his opening brief appellant says:

"It will be conceded, at the outset of this discussion, that the comptroller of the city of Seattle and the chairman of the finance committee, in entering into the contract referred to in the foregoing complaint, exceeded the authority vested in them by the charter of the city of Seattle, and if that contract were still executory, it would be unenforcible."

Although appellant has conceded that no formal contract has been made with him by the respondent, in any manner required by the city charter, nevertheless he contends that he has fully completed an implied contract, which is now executed and not executory, and that, as the city has received and enjoyed the benefit of his services, such contract has been ratified, and the city should be estopped from denying liability.   The principal cases relied upon by appellant in support of these propositions seem to be *Memphis Gas-Light Co. v. Memphis,* 93 Tenn. 612, 30 S. W. 25; *San Francisco Gas Co. v. San Francisco,* 9 Cal. 453; and *Argenti v. San Francisco,* 16 Cal. 256.   Other authorities are also cited, but the above-mentioned are the strongest in appellant's favor.

The case of *Memphis Gas-Light Co. v. Memphis, supra,* is based upon the California case of *San Francisco Gas Co. v. San Francisco, supra;* but the later doctrine of the California court on the questions here involved seems to be di-

rectly opposed to *San Francisco Gas Co. v. San. Francisco,* and *Argenti v. San Francisco, supra.* See *Zottman v. San Francisco,* 20 Cal. 97, which has been followed and approved by this court in, *Arnott v. Spokane,* 6 Wash. 442, 33 Pac. 1063, in which Anders, J., at page 447, says:

"While a municipal corporation would, unless restricted by law, have a right to make contracts in reference to its corporate business in any manner it might deem proper, yet, where the mode of contracting is expressly provided by law, no other mode can be adopted which will bind the corporation. This principle results from the fact that municipal corporations derive all their powers from their charters. 1 Dill. Mun. Corp. (4th ed.) 449 (373); *Zottman v. San Francisco,* 20 Cal. 97; *McCoy v. Briant,* 53 Cal. 247; *McDonald v. Mayor,* 69 N. Y. 23; *Bladen v. Philadelphia,* 60 Pa. St. 464; *Allen v. Galveston,* 51 Tex. 302; *City of Bryan v. Page,* 51 Tex. 532; *Head v. Providence Insurance Co.,* 2 Cranch, 150. In the case last cited, Chief Justice Marshall, in speaking of the subject, said: 'The act of incorporation is to them an enabling act; it gives them all the power they possess; it enables them to contract, and, when it prescribes to them a mode of contracting, they must observe that mode, or the instrument no more creates a contract than if the body had never been incorporated.' In fact, so far as we have observed, the authorities are practically uniform on this question."

In *Bryan v. Page,* 51 Tex. 532, 32 Am. Rep. 637, cited by Anders, J., an action was commenced by an attorney at law to recover the reasonable value of professional services rendered by him to the city of Bryan, under an irregular employment, not made in strict accordance with the requirements of the city charter. Although the services had been fully rendered by the plaintiff, and although the city had accepted the same, and had acted upon plaintiff's advice, the Texas court held that plaintiff was not entitled to recover, that the defendant city was not estopped from denying liability under an implied contract, and that neither the mayor nor the common council had been author-

ized to bind the city by a contract for legal counsel for their
assistance, no ordinance having been passed in relation to
such employment.

Sections 27 and 28 of art. 4 of the charter of the city
of Seattle read as follows:

"§ 27. No debt or obligation of any kind against the city
shall be created by the city council except by ordinance speci-
fying the amount and object of such expenditure.

"§ 28. Neither the city council nor any officer, board,
department or authority shall allow, make valid or in any
manner recognize any demand against the city which was
not at the time of its creation a valid claim against the
same, nor shall they or any of them ever allow or authorize
to be paid any demand which, without such action, would be
invalid, or which shall then be barred by any statutes of
limitation, or for which the city was never liable, and any
such action shall be void."

These two sections clearly show, (1) that a contract, of
the kind claimed by the appellant to have have been implied
and afterwards ratified, could not be entered into or exe-
cuted by the city comptroller or finance committee, but could
only have been authorized by ordinance; (2) that appellant's
demand, not having been valid at the time of its original
creation, could not afterwards be made valid by the council
or any board or officer of the city. It therefore follows that,
although appellant has alleged that the officers and members
of the city council knew he was rendering services with the
expectation of compensation, and that said services had been
accepted by the said city, such facts cannot amount to a legal
ratification of any implied contract. His claim was origi-
nally invalid and, by reason of said § 28, has not been, and
cannot be, made valid. Appellant is presumed to have had
knowledge of the power and authority of the city comptroller
and chairman of the finance committee, and also to have
known of the provisions and requirements of the city charter,
in regard to the making of any contract for his services.
If he dealt with any city officers in a manner not in com-

pliance with the charter, he did so at his peril, and cannot now complain if respondent defends against his claim.

Appellant has alleged in his complaint that it had been the custom of respondent, for many years, to vest its financial control and management in its comptroller and the chairman of the finance committee; that for years these officers had exercised general supervision and management over respondent's financial affairs; and that their acts were acquiesced in and recognized by all departments and officers and agents of the city and by the general public; and now claims that, by reason of such custom, an implied contract arose between himself and respondent which was afterwards ratified. Any practice or custom of the officers of a municipal corporation in transacting business, not in strict compliance with the requirements of its charter, cannot bind such city on a contract not executed or authorized in the manner provided by such charter. *Wormstead v. Lynn,* 184 Mass. 425, 68 N. E. 841.

It also appears from the complaint that the appellant relies upon a ratification by respondent of his alleged implied contract. An allegation of ratification of a contract made in violation of a charter provision, is of no avail unless the acts relied upon for ratification would be sufficient to support a contract as an original proposition. In other words, if appellant be conceded to have had an implied contract irregularly made, and if it be further conceded that it could be ratified, such ratification could be by ordinance only. *Arnott v. Spokane, supra; Zottman v. San Francisco, supra;* Beach, Public Corporations, § 251; *Caxton Co. v. School District No. 5,* 120 Wis. 374, 98 N. W. 231.

In Tiedeman, Municipal Corporations, § 170, the author says:

"When the statutes prescribe a special mode in which alone a valid contract can be made by the municipality, and the contract is invalid, because of non-compliance with the statutory requirement, it must be observed in any act of ratifica-

tion. Thus, where a corporation could only make a valid contract by ordinance, the ratification is required to be by ordinance, and cannot be ratified by a subsequent resolution."

From the above authorities and reasoning, we conclude that no implied contract between appellant and the city existed, and also that no contract was ratified by the city.

The only remaining question is whether said alleged implied contract, being now executed and not executory, the city was estopped from denying liability to the appellant, it having received and availed itself of the benefit of his services. While there is some conflict upon this proposition, we believe the weight of modern authority is to the effect that no such estoppel exists. *Arnott v. Spokane, supra; Chippewa Bridge Co. v. Durand* (Wis.), 99 N. W. 603; *Keane v. New York,* 88 App. Div. 542, 85 N. Y. Supp. 130.

We think the complaint fails to state a cause of action. No error was committed in sustaining the demurrer. The judgment is affirmed.

MOUNT, C. J., DUNBAR, HADLEY, and FULLERTON, JJ., concur.