[No. 8595. Department One. October 12, 1910.]

JAMES H. GREEN, *Appellant*, v. OKANOGAN COUNTY *et al.*, *Respondents*.[1]

APPEAL—DISMISSAL—CESSATION OF CONTROVERSY. An appeal from a judgment dismissing an action to enjoin the execution of a contract for the construction of a county bridge, will not be dismissed on the ground that the controversy has ceased by reason of the defendant's execution of the contract since the appeal was taken; since the court may still grant the appellants relief if the judgment was erroneous.

[1]Reported in 111 Pac. 226.

BRIDGES —PROCEEDINGS —NAVIGABLE STREAMS—STATUTES—REPEAL.
Rem. & Bal. Code, § 5680, providing for publishing notice and pre-
liminary steps to declare a public necessity etc., before letting con-
tracts for county bridges across navigable streams, was not super-
ceded by the act of 1893 (Rem. & Bal. Code, § 5575), a general act,
not complete in itself, relating to county road and bridge work, and
containing no specific provisions relating to contracts for bridge
construction across navigable streams; nor was it superseded by
the act of 1903 (Rem. & Bal. Code, § 5585), relating to the letting of
contracts where the estimated cost exceeds $150, since the latter is
merely supplemental to and not conflicting with the earlier act,
which relates chiefly to steps preliminary to the letting.

SAME—EFFECT OF FEDERAL ACT.  The operation of Rem. & Bal.
Code, § 5680, providing for publishing notice and preliminary steps
to declare a public necessity etc., before letting contracts for county
bridges across navigable streams, is not affected by the subsequent
Federal acts providing that navigable streams shall not be bridged
except by consent of Congress and upon executive approval of the
plans, as this but imposes an additional burden upon the county.

SAME—CONTRACTS—ADVERTISING FOR BIDS—EMERGENCY—STATUTES
—CONSTRUCTION.  No emergency exists excusing the county commis-
sioners from letting a bridge contract without competitive bids,
within the contemplation of Rem. & Bal. Code, § 5585, in the case
of new construction and where all the former means for crossing
the river remained intact, and there was no sudden increased de-
mand rendering existing facilities inadequate for the short time
(three weeks) necessary for advertising for bids.                    .

COUNTIES—COMMISSIONERS—CONTRACTS.  County commissioners in
letting a bridge contract must strictly comply with the law, or it
is not binding and money paid thereon can be recovered.

COUNTIES—CONTRACTS—ACCEPTANCE OF BENEFITS UNDER ILLEGAL
CONTRACT—RECOVERY.  Where a county has accepted and is using
a county bridge, constructed under a contract let without complying
with the law, but which the county could have entered into if it
had conformed to the statutory requirements, it is liable for its
reasonable value, and can only recover any excess wrongfully paid
out (RUDKIN, C. J., dissenting).

COUNTIES—CONTRACTS—BRIDGE DONATIONS—RECOVERY.  Money do-
nated to a county to induce the construction of a county bridge be-
longs to the county, and may be recovered by the county if it has
been wrongfully paid out under an unauthorized contract.

Appeal from a judgment of the superior court for Okan-
ogan county, Taylor, J., entered October 5, 1909, upon find-

ings in favor of the defendants, after a trial on the merits before the court without a jury, in an action to enjoin the execution of a contract.   Reversed.

*Alvin W. Barry,* for appellant, contended that the Federal act was not repugnant to, and did not repeal, the state law. *Sinnot v. Davenport,* 63 U. S. 227; *Cummings v. Chicago,* 188 U. S. 410; *Lake Shore & M. S. R. Co. v. Ohio,* 165 U. S. 366; *Minnesota Canal & Power Co. v. Pratt,* 101 Minn. 197, 112 N. W. 395, 11 L. R. A. (N. S.) 105; *Gulf C. & S. F. R. Co. v. Meadows* (Tex. Civ. App.), 120 S. W. 521; *State ex rel. Ellis v. Gerbing,* 56 Fla. 603, 47 South. 353.   In the dispensation of public money, the board of county commissioners acts as a trustee for the public, and the law must be strictly complied with.   *Smith v. Lamping,* 27 Wash. 624, 68 Pac. 195; *Arnott v. Spokane,* 6 Wash. 442, 33 Pac. 1063; *Long v. Pierce County,* 22 Wash. 330, 61 Pac. 142; *Chehalis County v. Hutcheson,* 21 Wash. 82, 57 Pac. 341, 75 Am. St. 818; *McAllister v. Okanogan County,* 51 Wash. 647, 100 Pac. 146, 24 L. R. A. (N. S.) 764; *Sadler v. Board of Com'rs of Eureka County,* 15 Nev. 39; *Foster v. Coleman etc.,* 10 Cal. 278; *County of Modoc v. Spencer,* 103 Cal. 498, 37 Pac. 483; *Jones v. Commissioners of Lucas County,* 57 Ohio St. 189, 63 Am. St. 710; 11 Cyc. 390, and cases cited.   These principles have been applied in county bridge cases. *Wrought Iron Bridge Co. v. Board of Com'rs of Hendricks County,* 19 Ind. App. 672, 48 N. E. 1050; *Commonwealth ex rel. Carlson v. Baker,* 212 Pa. St. 230, 61 Atl. 910.   See, also, *Sturgeon v. Hampton,* 88 Mo. 203; *Alderson v. St. Charles County,* 6 Mo. App. 420, 426; *Dirks v. Collin,* 37 Wash. 620, 79 Pac. 1112.   The invalidity of these contracts, occasioned by a failure of the county commissioners to observe the law of 1891 in first determining the existence of a public necessity for said bridge, cannot be waived by a subsequent ratification thereof.   *Board of Supervisors of Jefferson County v. Arrighi,* 54 Miss. 668; *Arnott v. Spokane, supra;* 9 Cyc. 475;

*Cumberland Telephone & Telegraph Co. v. Evansville*, 127 Fed. 187; *McCurdy v. Shiawassee County*, 154 Mich. 550, 118 N. W. 625; 11 Cyc. 468; *Bauer v. Franklin County*, 51 Mo. 205. Where the mode of contracting is expressly provided by law, no other mode can be adopted which will bind the corporation. *Arnott v. Spokane, supra*, and cases cited. *State ex rel. Spring Water Co. v. Monroe*, 40 Wash. 545, 82 Pac. 888; *Zottman v. San Francisco*, 20 Cal. 97; *Smith v. Lamping*, 27 Wash. 624, 68 Pac. 195. It excludes all other modes of procedure. *Sadler v. Board of Com'rs of Eureka County, supra; State ex rel. Holley v. Boerlin*, 30 Nev. 473, 98 Pac. 402; 2 Abbott, Municipal Corporations, pages 1414, 1415. There was no emergency within the meaning of the law dispensing with notice. *Colfax County v. Butler County*, 83 Neb. 803, 120 N. W. 444; *Board of Supervisors of Logan County v. People etc.*, 116 Ill. 466, 6 N. E. 475; *People ex rel. Com'rs of Highways v. Board of Supervisors*, 21 Ill. App. 271; *People v. Lee Wah*, 71 Cal. 80, 11 Pac. 851; *Sheehan v. City of New York*, 37 Misc. Rep. 432, 75 N. Y. Supp. 802; *Burger v. Omaha etc. St. R. Co.*, 139 Iowa 645, 117 N. W. 35, 130 Am. St. 343.

*William C. Brown, Roberts, Battle, Hulbert & Tennant, C. J. France*, and *P. D. Smith*, for respondents, contended, among other things, that, in so far as Congress assumes to act, all state authority recedes before it. *Willamette Iron Bridge Co. v. Hatch*, 125 U. S. 1; *United States v. Bellingham Bay Boom Co.*, 176 U. S. 211; *Cummings v. Chicago, supra; Montgomery v. Portland*, 190 U. S. 89; *Grays Harbor Boom Co. v. Lownsdale*, 54 Wash. 83, 102 Pac. 1041, 104 Pac. 267; *Palmer v. Peterson*, 56 Wash. 174, 105 Pac. 179. No state law can hinder or obstruct the free use of a license granted under an act of Congress. *Pennsylvania v. Wheeling etc. Bridge Co.*, 54 U. S. 518. When Congress has authorized the erection of a bridge, it is not necessary to obtain the consent of the state authorities for its erection. *Cobb v. Com-*

*missioners of Lincoln Park*, 202 Ill. 427, 67 N. E. 5, 95 Am.
St. 258, 63 L. R. A. 264; *Stockton v. Baltimore & N. Y. R.
Co.*, 32 Fed. 9; *Scranton v. Wheeler*, 179 U. S. 141. If Con-
gress declares a structure to be lawful, neither the state legis-
lature nor state courts can declare it unlawful as interfering
with navigation, or require consent or concurrence by the
state. *Frost v. Washington County R. Co.*, 96 Me. 76, 51
Atl. 806, 59 L. R. A. 69; *Stockton v. Baltimore & N. Y. R.
Co., supra; Decker v. Baltimore & N. Y. R. Co.*, 30 Fed. 723;
*Pennsylvania R. Co. v. Baltimore & N. Y. R. Co.*, 37 Fed. 129.
The state act of 1891 was void because in conflict with the
river and harbor act. *Hagan v. Richmond*, 104 Va. 723, 52
S. E. 385, 3 L. R. A. (N. S.) 1120. The recitals in the records
established the emergency contemplated by the statute. 11 Cyc.
400; 1 Elliott, Evidence, § 405; 2 Id. §§ 1273, 1277; *Dike-
man v. Parrish*, 6 Pa. St. 210, 47 Am. Dec. 455; *Bardsley v.
Sternberg*, 18 Wash. 622, 52 Pac. 251, 524; *Grafton v. Reed*,
34 W. Va. 172, 12 S. E. 767; *Sawyer v. Manchester etc. R.
Co.*, 62 N. H. 135, 13 Am. St. 541; 2 Abbott Trial Brief
(2d ed.), page 1914, § 78. The county commissioners were
sole judges of the emergency. *Garrigus v. Board of Com'rs
of Howard County*, 157 Ind. 103, 60 N. E. 948; *Farrelly v.
Cole*, 60 Kan. 356, 56 Pac. 492, 44 L. R. A. 464; *State v.
Fair*, 35 Wash. 127, 76 Pac. 731, 102 Am. St. 897; *Dillon v.
Whatcom County*, 12 Wash. 391, 41 Pac. 174; *Reed v.
Gormley*, 47 Wash. 355, 91 Pac. 1093; *State ex rel. Porter
v. Headlee*, 19 Wash. 477, 53 Pac. 948. There has been a
cessation of the controversy entitling the respondent to a dis-
missal of the appeal. *State ex rel. Scottish-American Mtg.
Co. v. Meacham*, 17 Wash. 429, 50 Pac. 52.

FULLERTON, J.—The board of county commissioners of
Okanogan county entered into a contract with the Puget
Sound Bridge & Dredging Company and Charles Ostenberg
for the construction of a bridge across the Okanogan river,
for a stated consideration, to be paid in part from moneys

belonging to Okanogan county and in part from moneys subscribed for that purpose and turned over to the county by citizens of Okanogan city, a town situated on the Okanogan river at the point where it was proposed to construct the bridge. After the contract had been let, the present action was begun to enjoin its execution, the plaintiff, appellant here, making parties defendant thereto all of the principals to the contract, including the members of the board of county commissioners as individuals. The contract was attacked on the ground that the commissioners had not complied with the requirements of the statute in its execution. The trial judge held against the contention of the plaintiff, and entered a judgment dismissing the action. This appeal was taken therefrom.

The respondents moved to dismiss the appeal, on the ground that there has been a cessation of the controversy. It appears from affidavits filed subsequent to the perfection of the appeal, that the board of county commissioners executed the contract after the dismissal of the action in the court below, and it is contended that now there is nothing upon which the injunction can operate, as the acts of the defendants sought to be enjoined have been fully performed. But this contention mistakes the power of the court. It is true that when, pending an appeal from the judgment of the lower court, and without any fault on the part of the respondent, an event occurs which renders it impossible to enter a judgment in favor of the appellant which will give any effectual relief, the court will not proceed to a formal judgment but will dismiss the appeal; and it is held, also, that the same result will follow if the intervening event is owing to some voluntary act of the appellant. But no such result follows merely because the respondent has changed the status of the subject-matter in litigation. So in this case, if it appears that the contract entered into was subject to be enjoined because in violation of the statutes, the court may now inquire into the subsequent acts of the respondents and

compel them to undo what they have wrongfully done, in so far as it is capable of undoing, and to answer in damages for anything that cannot be undone.

This principle was announced in the early case from this court of *Hartson v. Dale*, 9 Wash. 379, 37 Pac. 475. There an action was begun to enjoin a county treasurer from paying a county warrant which had been unlawfully issued. The relief was denied in the court below, and pending the appeal, the warrant was paid by its treasurer. This fact was shown to this court and a motion to dismiss the appeal on that ground was made. But the court denied the motion, reversed the judgment of the court below, and sent the case back for further proceedings. But while this case was correctly decided, it is probable that a wrong reason was given in support of the conclusion of the court. The decision was rested on the ground that it would be highly inequitable to allow any subsequent action of the respondent to have the effect of subjecting the appellant to the costs of a meritorious appeal, while the decision ought to have been rested on the ground we have before indicated; namely, that the court had power to enter an effectual decree by compelling the parties to undo what they had wrongfully done, or compel them to answer in damages therefor. In *Farnsworth v. Wilbur*, 49 Wash. 416, 95 Pac. 642, it was held that the court, in an action of equitable cognizance, had power to issue mandatory as well as prohibitory injunctions, and could, in virtue of its powers, compel the undoing of those acts which have been illegally done—in that case, to compel the vacation of an illegal transaction in which a judgment had been satisfied and discharged of record in consideration of a payment less than the whole. In *Mills v. Green*, 159 U. S. 651, the court used this language:

"If a defendant, indeed, after notice of the filing of a bill in equity for an injunction to restrain the building of a house, or of a railroad, or of any other structure, persists in completing the building, the court nevertheless, is not deprived

of the authority, whenever in its opinion justice requires it, to deal with the rights of the parties as they stood at the commencement of the suit, and to compel the defendant to undo what he has wrongfully done since that time, or to answer in damages."

See, also, *Tucker v. Howard*, 128 Mass. 361; *Pennsylvania Co. v. Bond*, 99 Ill. App. 535; *Tate v. Field*, 56 N. J. Eq. 35. The fact that no temporary injunction has been granted does not affect the kind or the extent of the remedy to which the plaintiff is entitled upon establishing his right at the hearing on the merits. *Tucker v. Howard, supra*. The motion to dismiss will be denied.

Passing to the merits of the controversy, it remains to inquire whether or not there was a compliance with the statutes in the letting of the contract. That portion of the Okanogan river from its mouth to a point above the site of the bridge is navigable, being capable of floating water craft of considerable dimensions. In 1891 the legislature of this state passed an act relating to the construction of bridges across navigable streams by boards of county commissioners, the material part of which is found in § 5680 of Rem. & Bal. Code, which reads as follows:

"Whenever the county commissioners of any county or counties desire to erect a bridge on any public highway across a navigable stream, under the provisions of this act, said board or boards shall cause to be published a notice in a newspaper of general circulation in the county or counties, if such there be; and if there be no newspaper published in the county or counties, then by posting three notices, one in the locality of the place to be bridged, and two in the most public places in the county or counties; such notice shall contain the name of the stream to be bridged and the exact point where such bridge is to be erected, and the date when the said board will determine the public necessity for the building of said bridge: Provided, that when such bridge is to be built by two counties, the notice shall be published in both counties. At the time fixed in such notice the board of county commissioners shall declare such public necessity by an order of record, which said order shall, in addition to the other

facts, prescribe the width of the draw to be made, if any draw shall be considered necessary in such bridge, and also the length of span necessary to permit the free flow of water: Provided, that such bridges shall be so constructed as not to interfere with, impede, or obstruct the navigation of such streams."

There is no pretense that the commissioners in letting the contract for the construction of this bridge complied, or attempted to comply, with the provisions of this statute. The commissioners seek to excuse themselves, however, by asserting that the statute is no longer in force, it having been superseded, it is contended, both by subsequent state legislation and by Congressional enactments on the same subject. The state legislation referred to is the act of March 9, 1893 (Laws 1893, p. 147; Rem. & Bal. Code, § 5575), and the act of March 16, 1903 (Laws 1903, p. 225; Rem. & Bal. Code, § 5585). The first of these acts, while it relates to the construction, repair and improvement of public highways generally, contains no specific provision relating to contracts for the construction of bridges over navigable streams, nor does it purport to cover within itself the entire law on the subject-matter of which it treats; for example, it contains no provision relating to obtaining a right of way for public highways, or the construction of highways lying in two or more counties, or the construction or repair of bridges across streams which form the boundary line between two counties, or the manner of letting of contracts for the construction of bridges generally. These were matters perhaps that would fall within the title and spirit of the act, but since the act contains no provision relating to them, the act cannot be said to have been a complete act on the subject of roads and bridges; and consequently, since there is no direct conflict between the acts, there can be no implied repeal of the one by the other.

The second act cited is more to the point, as it does contain a specific provision with relation to the construction of bridges. But there is nevertheless no conflict between the.

acts.  The act thought to be superseded, it will be noticed, relates chiefly to the preliminary steps to be taken before any attempt is made to let the contract for the construction of the bridge, while the latter relates solely to the letting of the contract.  It provides that bridge construction of which the estimated cost is more than one hundred and fifty dollars, except in cases of emergency, shall be let by contract by the county commissioners on plans and specifications previously prepared, etc.  The later act, therefore, but supplements the earlier one, and cannot under any construction operate as a repeal of it.

The Federal statutes are intended to protect the rights of the public at large in navigable streams, or perhaps more accurately, the right of navigation thereon.  In substance they provide that no navigable stream shall be bridged at all without the consent of Congress, and when consent is given, that the bridge constructed shall be according to plans and specifications approved by the chief of engineers and by the secretary of war.  But it is manifest that these statutes in no way interfere with the operation of the state statutes. They impose an additional burden on the county commissioners, inasmuch as the plans adopted by them must meet the approval of the Federal authorities named, but they offer no other hindrance to the workings of the state statutes.  We think, therefore, that the statute quoted was in force at the time the contract in question was entered into.

But the statutes of the state were also violated in another particular.  The contract for the construction of the bridge was let without calling for competitive bids, although the contract called for an expenditure in excess of one hundred and fifty dollars.  This act on the part of the commissioners is sought to be excused by the plea that an emergency existed which would not permit of a delay long enough to do the necessary advertising.  But we can find no support in the record for the contention.  It might perhaps be that were all of the bridges across a stream lying between two

populous centers to be destroyed by a sudden flood or other unlooked for catastrophe, that such an emergency would exist for the replacement of some one or more of them that the public authorities would be justified in entering upon the work of replacement without calling for competitive bids, but it is difficult to understand how any such necessity can arise with reference to entirely new construction. But be this as it may, there was clearly no such necessity in this instance. All of the means for crossing the river that had theretofore served the people were still intact, no sudden flood or other catastrophe had interfered with their operation, nor was there any sudden increase in the number of persons desiring to cross the river as to render the existing facilities inadequate; in fact, nothing necessitating the construction of the bridge was shown other than the fact that the increase in population was generally outgrowing the existing facilities. Under these circumstances it seems worse than idle to argue that the rush was so great as not to brook of a delay of three weeks, the time required to advertise for competitive bids.

As boards of county commissioners themselves are but creatures of the statute, they must pursue and exercise the powers conferred on them in strict compliance with the statutes. Only by so doing, can they bind their principal. Contracts entered into in defiance of the manner pointed out by the statutes, or which have no support in the statutes, bind no one. Money paid out in pursuance of such contracts can be recovered back from any person into whose hands it can be traced. In fine, the proceedings, in so far as they affect the county, are nullities. *Smith v. Lamping*, 27 Wash. 624, 68 Pac. 195; *Arnott v. Spokane*, 6 Wash. 442, 33 Pac. 1063; *Wrought Iron Bridge Co. v. Board of Comr's.*, 19 Ind. App. 672; *Commonwealth v. Baker*, 212 Pa. 230, 61 Atl. 910.

From the foregoing considerations it necessarily follows that the contract in question was void, and affords no justification for the acts of the board of county commissioners,

nor of the other parties to the contract who acted under it. But we cannot follow the appellant's argument to the effect that such persons are jointly and severally liable to return to the county treasurer the money of the county directed to be paid out by the board and received by the persons building the bridge. While this may be the rule in some jurisdictions, this court has adopted the more equitable doctrine of allowing the parties, where the contract if entered into in conformity with the statutes would not have been unlawful, to retain from the moneys received by them a sum equivalent to the reasonable value of the property the county acquires and retains in virtue of the execution of the void contract. Such, in substance, is the doctrine of the case of *Criswell v. Directors School District No. 24,* 34 Wash. 420, 75 Pac. 984. To the same effect is *Chapman v. County of Douglas,* 107 U. S. 348, cited in the case from this court. There a county had entered into an illegal contract for the purchase of a farm of which it had received a conveyance. The court held the county liable, independent of the contract, to make payment for the land or reconvey it to the vendors. In the course of the opinion, this language was used:

"The agreement, as we have assumed, so far as it relates to the time and mode of payment, is void; but the contract for the sale itself has been executed on the part of the vendor by the delivery of the deed, and his title at law has actually passed to the county. As the agreement between the parties has failed by reason of the legal disability of the county to perform its part, according to its conditions, the right of the vendor to rescind the contract and to a restitution of his title would seem to be as clear as it would be just, unless some valid reason to the contrary can be shown. As was said by this court in *Marsh v. Fulton County,* 10 Wall. 676, 684, and repeated in *Louisiana v. Wood,* 102 U. S. 294, 'the obligation to do justice rests upon all persons, natural and artificial, and if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation.'"

So in this case, since the county has accepted and made use

of the bridge, it is liable to the builders for its reasonable value, and it is entitled to recover only the difference between the reasonable value of the bridge and the amount paid for its construction.

As we have elsewhere stated, one-half the cost of the bridge was contributed by donations to the county from private parties interested in the construction of the bridge. It is suggested that in case it is found that the reasonable value of the bridge is less than the amount paid for its construction, only one-half of such difference should be refunded to the county. But we think the county entitled to the entire difference. The gift to induce the construction of the bridge was to the county and paid into the county treasury, not to the board of county commissioners nor to the contractors, and the county is entitled to its return if it has been wrongfully paid out.

The judgment appealed from is reversed, and the cause remanded with instructions to reinstate the case, take an accounting of the moneys paid out by the county in the construction of the bridge, and ascertain the reasonable value of the bridge, and if the amount paid by the county exceeds the reasonable value of the bridge, enter a judgment against the parties receiving the money for the difference; if the value of the bridge equals or exceeds the sum paid for its construction, then enter a judgment to the effect that the appellant take nothing by his action. Costs in this court will be allowed the appellant; costs in the court below to abide the event of the final hearing.

Morris, J., concurs.

Gose, J. (concurring)—In concurring I desire to add a few words to what has been said by Judge Fullerton. This is a suit in equity, prosecuted by a taxpayer upon behalf of all the taxpayers of the respondent county. The fact that the contract has been executed since the commencement of the action ought not to defeat the right of the appellant to

such relief as equity can afford. As a taxpayer he was interested in the contract being let in the manner provided by law. The purpose of the statute in requiring the giving of notice was to prevent collusion and fraud, and to insure the public against extravagance. The contract was one which the commissioners had the power to make by pursuing the method directed by the statute. Failing to comply with the statute, the contract is not enforcible, but the county is holden for the reasonable value of the bridge. If contractors are only allowed to recover such reasonable value, the spirit of the statute will be met. The law-making body assumed that the giving of the notice and letting the contract to the lowest bidder would insure the public that it would secure the work for a reasonable price. The county cannot be held for more than the reasonable value of the work, and the principles of common honesty, applicable alike to natural and artificial persons, forbid that it shall retain and use the bridge and pay a less sum. Whatever sum, if any, it has paid in excess of the reasonable value of the work can be recovered in this action and be restored to the county. The further progress of the case may require the filing of a supplemental bill, but the relief indicated is within the equity powers of the court. All the parties in interest are before the court. To avoid a multiplicity of suits a court of equity, when it has acquired jurisdiction over a matter for a particular purpose, will determine the whole controversy and confer complete relief. The denial of injunctive relief does not exhaust the court's jurisdiction. 1 Pomeroy, Eq. Jur. (3d ed.), § 243.

We are aware that there are cases holding that, where a statute has not been complied with by the officers of a municipal corporation, there is no liability. The injustice of such a rule is apparent where, as in this case, the county retains a needed improvement which it had the power to make had it pursued the mandate of the statute. In addition to the authorities referred to by Judge Fullerton, I cite as supporting our view: *Citizens' Central Nat. Bank v. Appleton,*

216 U. S. 196; *O'Connor v. Stewart*, 19 La. Ann. 127;
*Town of Nome v. Lang*, 1 Alaska 593.

I therefore concur.

Chadwick, J., concurs in the result.

Rudkin, C. J. (dissenting)—I concur in the judgment of
reversal, but dissent from the conclusion of the majority of
the court that the contractor is entitled to recover the rea-
sonable value of the bridge constructed under its void con-
tract. The abstract equity of the rule thus announced ap-
peals to me, but the argument in its support is specious and
unsound. One object of the statute is doubtless to enable
the taxpayers to procure the construction of public works at
a reasonable cost, as suggested in the majority opinion, but
a far more important object is the prevention of favoritism,
corruption, extravagance, and improvidence on the part of
public officials. How will this latter object be accomplished
if the majority opinion prevails? Counties can act only
through their boards of county commissioners and other
public officials, and if a contractor sues a county to recover
the reasonable value of services performed or material fur-
nished under a void contract, or if the county sues the con-
tractor to recover any excess paid over such reasonable value,
it is presuming entirely too much in favor of weak human
nature to assume that the delinquent officials will be over-
diligent or overzealous in proving that their unauthorized
contract was improvidently or fraudulently entered into.
The only safe rule to adopt, and the only rule that will at all
safeguard the public interest, is the rule which prohibits a
recovery in such cases on the contract or otherwise, and I am
convinced that this rule is supported by the better reason
and by the weight of authority. 1 Beach, Public Corp.,
§ 698; 1 Dillon, Mun. Corp. (4th ed.), § 466; *Brady v.
Mayor etc. of New York*, 16 How. Pr. 432; *Mayor etc. of
Baltimore v. Reynolds*, 20 Md. 1, 83 Am. Dec. 535; *People
ex rel. Coughlin v. Gleason*, 121 N. Y. 631, 25 N. E. 4;

*Addis v. Pittsburgh*, 85 Pa. St. 379; *Chippewa Bridge Co. v. Durand*, 122 Wis. 85, 99 N. W. 603; *Keane v. New York*, 88 App. Div. 542, 85 N. Y. Supp. 130.

Nor can I agree with the majority that this court has heretofore adopted a different rule. It seems to me that *Arnott v. Spokane*, 6 Wash. 442, 33 Pac. 1063; *State v. Pullman*, 23 Wash. 583, 63 Pac. 265, 83 Am. St. 836, and *Paul v. Seattle*, 40 Wash. 294, 82 Pac. 601, are directly opposed to the doctrine announced in the majority opinion. In the *Pullman* case, Dunbar, C. J., cited with approval the cases from New York and Maryland; and in the *Paul* case it was explicitly held that no implied promise arises from the receipt of benefits under a void contract, citing *Chippewa Bridge Co. v. Durand*, and *Keane v. New York*, *supra*, which fully support the views I have expressed.

For these reasons I am of the opinion that the county is entitled to recover the entire consideration paid, and in so far as the majority hold otherwise, I am constrained to dissent.

## ON REHEARING.

### [*En Banc*.   March 22, 1911.]

PER CURIAM.—Upon a reargument of this case *en banc*, the judgment will be reversed for reasons assigned in the former opinion.