[No. 11243. *En Banc.* October 24, 1913.]

## P. E. McHugh, *Appellant*, v. The City of Tacoma, *Respondent*.[1]

MUNICIPAL CORPORATIONS—PUBLIC WORKS — CONTRACT — CONSTRUCTION—CHANGES—EXTRA WORK. A clause in a contract for the construction of a pipe line for city water works, along a specified route, reserving to the city the right to make any changes in lines, grades, and plans without being liable for extra work, refers to reasonable and not to radical changes; and the change is a radical one, not authorized by the contract, and the city is liable for extra work, as provided for in the contract, where for a distance of six miles of a fifteen mile pipe line, the city ordered a change of route two and one-half miles distant from the line bid upon, through a more difficult soil known as hardpan, and requiring excavation at a greater depth; especially where, at the time the change was made, the contractor and city engineer in charge of the work, and the city council by resolution, recognized the change as entailing extra work under the contract.

SAME—CHANGES—POWERS OF OFFICERS—FIXING EXTRA PAY. Upon a dispute as to the cost of extra work required of a city contractor for the construction of a pipe line, the city engineer, the commissioner, and the city council have the right to agree with the contractor as to the actual cost of the work, upon which the payments were to be based, as provided for in the contract.

SAME—CONTRACT—EXTRA WORK—PAYMENT. Under a contract for the construction of a city pipe line, classifying the excavation as solid rock, loose rock, and earth, to be paid for by the cubic yard, and which provided that extra work should be paid for at cost with ten per cent added, it is immaterial, where a change of the line made extra work and the parties had mutually agreed upon the cost thereof, whether such extra excavation in "hardpan" was properly classified as loose rock or solid rock; since the "cost" and ten per cent added is all the contractor could recover.

SAME—CONTRACT—CHANGES IN CONTRACT PRICE—POWER OF CITY. Where a contract for the construction of a city pipe line provided for excavation to be paid for by the cubic yard, and defined solid rock as rock that could not be removed without blasting and boulders exceeding fourteen cubic feet in volume, and loose rock as boulders not exceeding that size nor less than one cubic foot in case the rock comprises 25 per cent of the material removed, and classified all other material excavated as earth, the city could not change the

[1]Reported in 135 Pac. 1011.

contract so as to allow payment for the excavation of "hardpan" along the specified route, under the classification of "loose rock," without reletting the contract in the manner required by law.

SAME—CONTRACT—EXTRA WORK. Under a city contract for a pipe line, providing that the city may make changes in the lines and grades and that no allowance therefor should be made to the contractor except where the quantities were increased, which increase was to be paid for by the yard, a slight change in the slope of the excavation is authorized without rendering the city liable for extra work, aside from the extra material excavated.

SAME—EXTRA WORK—WHAT CONSTITUTES. Where a contract for a city pipe line required the trench for pipe in a "town or city" to be filled and thoroughly tamped and the surplus material removed, and that all work be done in a first-class manner, tamping in the country around the bottom of the pipe is not extra work if it was necessary to tamp the earth at the bottom of the pipe to properly hold it in place and keep it from sagging in order to do the work in a first-class manner.

INTEREST—ON CONTRACT. In an action for a balance due on a city contract, plaintiff is entitled to interest from the time of the completion of the work.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered January 11, 1913, upon findings in favor of the defendant, in an action on contract tried to the court. Modified.

*Fletcher & Evans* and *Sullivan & Christian*, for appellant.

*T. L. Stiles* and *Frank M. Carnahan (Davis & Neal*, of counsel), for respondent.

MOUNT, J.—The plaintiff brought this action to recover money alleged to be due from the defendant city on the completion of a contract between him and the city, for the construction of a water pipe line and telephone line from the Mc-Millan reservoir, in Pierce county, to South "J" street and Wright avenue, in the city of Tacoma.

It is alleged in the complaint that final payment upon the contract amounted to $76,761.56, which was retained by the city until final completion of the contract, and that the same is now due. It is further alleged that certain extras, aggre-

gating an additional amount of $50,814.75 is also due upon the contract. Upon issues made by the complaint, answer and reply, the cause was tried to the court without a jury. At the conclusion of the trial, the court made certain findings, and concluded that the plaintiff was entitled to a judgment against the defendant for $16,827.02. Judgment was entered for that amount. The plaintiff has appealed.

The facts are substantially as follows: In the year 1910, the city, being desirous of obtaining an additional water supply, enacted an ordinance which provided therefor. This ordinance was a proposal to be submitted to the voters for ratification or rejection. It was passed on January 5, 1910, and provided that the proposal be submitted to the electors of the city on the 5th day of April, 1910. It provided for detailed plans and specifications and for the method of payment for the construction of the water system. It was submitted to the electors of the city at the time stated, and was approved by the required vote.

This ordinance provided, among other things, that, if the proposal for constructing the water system should be adopted, it should be the duty of the commissioner of light and water of the city to cause all necessary surveys and examinations of lands to be made, and to cause all rights of way, water rights, easements and privileges necessary and proper for the construction, maintenance and operation of the water system to be acquired, and after proper resolutions of the city council, to cause to be prepared full detailed plans and specifications for the water system, with an estimate of the probable cost of the same in detail and as a whole. It provided that, when directed to do so by resolution of the city council, the commissioner of light and water should advertise for bids for the construction of the water system according to the plans and specifications on file in his office, or as the same may have been modified by resolution of the city council; and that the advertisement for bids should stipulate that bids should be

5—76 WASH.

made in the manner prescribed, and under the terms and conditions as to bids for public work as provided in the charter of the city; that contracts should be entered into for material and work of constructing the water system, and should provide for payment therefor only in special water fund warrants at par. The ordinance also provided: "That whenever during the progress of the work under any contract any work or material not prescribed in the plans and specifications for said work shall be ordered by resolution of the city council, the same shall be done or furnished by the contractor at actual cost and ten per cent added."

After the passage of this ordinance and its approval by the people of the city of Tacoma, plans and specifications were made by the commissioner of light and water, or under his direction, and bids were regularly called for in accordance with these plans and specifications. These plans and specifications provided for a pipe line 58 inches in diameter from outside to outside, to be laid under the earth in a cut or trench eight feet wide at the bottom, and at a depth sufficient to permit the pipe line to be covered to a depth of not less than 2 feet. The pipe line provided for in the plans and specifications from the McMillan reservoir to Wright avenue and South "J" street in the city of Tacoma was about fifteen miles in length.

The plans and specifications submitted to the bidders provided that the pipe line should begin at the McMillan reservoir, and extend thence westerly along Collins' road a distance of six and one-half miles to Johnson's road; thence following Johnson's road north a distance of three and one-half miles, thence west along South Seventy-Second street, in the city of Tacoma, about three miles, thence north along Park avenue a distance of one and three-fourths miles to South Forty-Second street, thence west about one-fourth of a mile on Forty-Second street to South "J" street, thence north about one mile on South "J" street to Wright avenue.

Upon the plans and specifications, quantities estimated to

be necessary to construct the pipe line were stated.  Each bidder was furnished with a form for his bid, the approximate quantities of work to be done and materials to be furnished, and a description of the material and of the character of the work, the form of his contract, and bond.  Plans and specifications for the work were on file in the office of the commissioner of light and water of the city.  The bids were called for and let upon the unit or quantity system.

The appellant's bid was determined by the council to be the lowest.  It was as follows:

| | |
|---|---:|
| Clearing, per acre | $75.00 |
| Grubbing, per acre | 100.00 |
| Excavation—solid rock, per cu. yd. | 1.00 |
| "        loose  "   "   "   " | .80 |
| "        earth  "   "   "   " | .44 |

### WOODEN STAVE PIPE

| | |
|---|---:|
| Staves in place, per lin. ft. of pipe | 1.58 |
| Bands, complete in place, each | .64 |
| Air valves complete in place, each | 100.00 |
| Blow-offs complete in place, each | 65.00 |
| Waste pipe in place, per lin. ft. | 1.50 |
| Cast iron elbows complete in place, each | 25.00 |

### RAILWAY AND COUNTY ROAD CROSSINGS

| | |
|---|---:|
| Concrete in place per cubic yard | 8.00 |
| Timber in place, per thousand feet, B. M. | 25.00 |

### TELEPHONE LINE

| | |
|---|---:|
| Telephone line with poles complete, per mi. | 250.00 |
| "          " without poles complete, per mi. | 115.00 |
| Total amount of bid | $417,441.00 |

This bid of the appellant was accepted, and on the 29th day of May, 1911, the appellant entered into a contract with the city of Tacoma for the work.  The contract, among other things provided:

"Whenever during the progress of the work of said contract any work or material not contained in the plans and specifications thereof shall be ordered by resolution of the city council, the same shall be done or furnished by the contractor at actual cost and ten per cent added."

The specifications, which were referred to in the contract, and made a part thereof, provided as follows:

"The city shall have the right to make any changes in lines, grades and plans that may be deemed advisable by the commissioner after the work is started, and the contractor shall make such changes upon the order of the commissioner. No allowance shall be made the contractor on account of such changes, except where the quantities of materials have increased, and in such case the contractor shall be paid at the contract prices for the additional amount of material furnished and work done. The contractor shall be paid at the contract prices for only the actual amount of material furnished and work done, regardless of the approximate quantities stated herein."

Sometime in June, after the contract was entered into, the appellant commenced the work of excavation at South "J" street and Wright avenue, in the city of Tacoma. After constructing some five or six hundred feet of ditch from this point south on South "J" street, the city of Tacoma concluded to make a change in the pipe line. A resolution was passed on August 2, 1911, making a radical change from the line provided for in the specifications. This changed line followed substantially the one stated in the specifications from South "J" street and Wright avenue to South Seventy-Second street, a distance of nearly three miles. From South Seventy-Second street, instead of turning east a distance of about two and one-half miles, it continued south a distance of three and one-half miles to what is known as Sheridan avenue. It then followed Sheridan avenue and Cooper's road east a distance of two and one-half miles to Johnson's road, where it again intersected the line as shown on the plans and specifications.

This change of the line did not materially increase the length thereof, but it required deeper excavation in harder material. When the change was made, a new profile was furnished to the appellant. The appellant thereupon immediately insisted that this change in the route would greatly

increase the expenses of the work, and was not contemplated when he made his bid, nor included in the original contract. He insisted that he was entitled to have compensation made him for the increased expenses and costs. The commissioner of light and water acquiesced in this, and at the end of the first month's work thereafter, estimates were made upon the theory of allowing the appellant the cost price of excavation, with ten per cent added. This estimate was made by the commissioner of light and water and was filed in the office of the city clerk. The engineer in charge of the work was not entirely satisfied with the cost price as fixed, and claimed that the actual cost of the work was sixty-two and three-tenths cents per cubic yard for excavation, not including any profit to the appellant. The appellant claimed that the actual cost to him was more than seventy cents per cubic yard. In the meantime, the work progressed between South Sixty-Fourth and South Ninety-Sixth streets over the new line, when it was agreed between the appellant and the commissioner and the engineer that seventy cents was the approximate cost of the work with ten per cent added. Thereupon on January 17, 1912, the city commissioners passed a resolution as follows:

"Whereas, the city of Tacoma on the 29th day of May, 1911, entered into a contract with P. E. McHugh for the construction of a portion of the pipe line of the Green River Gravity Water System; and

"Whereas, the line and grade of a portion of said pipe line has been changed from the original location and caused to be placed along Park Avenue from South 64th street to South 96th street; and

"Whereas, said change has caused said P. E. McHugh a heavy expense on account of being compelled to dig a deeper trench through hard earth; Now, Therefore,

"Be it Resolved by the City Council of the City of Tacoma:

"That said P. E. McHugh be paid the sum of seventy cents (70c) per cubic yard for the excavation of trench on Park avenue from South 64th street to South 96th street, based

on the width and slopes of trench provided for by the plans and specifications; and

"Resolved: That in consideration of the passage of this Resolution and the payment herein agreed to be made, said P. E. McHugh shall abrogate and consider paid all claims for extra work that have accrued to date.

"This resolution shall take effect upon the agreement in writing of said P. E. McHugh and his sureties, assenting hereto, filed with the City Clerk."

This method of payment was consented to by the appellant. Thereafter the city paid to the appellant for this work from South Sixty-Fourth street to South Ninety-Sixth street at the rate of seventy cents per cubic yard for excavation. The city, however, retained fifteen per cent of the total until final payment under the contract. After the work had begun, and after the change had been made in the route, the appellant maintained that for the change in route he should also be allowed a new classification for loose rock; and on August 2, 1911, the city passed a resolution to the effect that the commissioner of light and water should classify all excavated material so firmly fixed in place that blasting or other great power is required to loosen the same (such material being commonly called "hardpan" or "boulder clay mixed with stones" equally as hard to remove as "hardpan") as "loose rock," and to be paid for at the price of sixteen cents above that bid for earth excavation; and that the actual quantity of loose rock excavated be measured and allowed regardless of percentage. Thereafter the appellant was allowed and paid for the excavation known as "hardpan" at the rate of sixty cents per cubic yard.

For a portion of the distance along the route, it was found that the franchise granted by the county over county roads was insufficiently wide for the construction of a large part of the ditch with a slope of one-half to one, as provided for in the original contract. The city, through its commissioner of light and water, directed the appellant to construct a vertical ditch, or nearly so. When the city decided to do this, the

question arose between the appellant and the commissioner of light and water as to the appellant's compensation for constructing a vertical ditch upon a large part of the right of way. The commissioner believing that it would be difficult to make compensation figuring cost price and ten per cent added, suggested that the appellant construct this vertical ditch and that instead of keeping an account of the cost and ten per cent added, the city would pay him whatever price the city was bound to pay him for the excavation of the ditch including the slope provided for in the contract, without regard to the amount of actual excavation. The appellant assented to this, and was thereafter paid eighty-five per cent by the proper city officials upon estimates made up in that way.

Upon the refill of the excavation after the pipe had been laid, the appellant was required to tamp the refill to approximately the center line of the pipe from the city limits to the reservoir, a distance of about eleven miles. The appellant claims that this was extra work outside of the contract, and that he is therefore entitled to reasonable pay therefor, which is alleged to be $4,000. Other facts necessary to an understanding of the points presented will be stated hereafter when we come to consider those points.

The principal and controlling question in the case is, whether the change of route was such a change as would constitute extra work under the ordinance approved by the citizens and under the terms of the contract.

The trial court found as a fact that the change of line did not involve any material change in the character of soil to be worked, or of the depth of the trench to be dug in the construction of the pipe line; that appellant made no objection to such change in route, but proceeded with the work under his contract, and furnished and put in place materials and performed labor as he had agreed in his contract. No question is made in the voluminous briefs filed in the case upon any other items than the items under the provision for exca-

vation; and no allowance for pay above the bid of the appellant appears to have been made by the city for any other items except the items for excavation hereinabove referred to. The court below was of the opinion that the contract entered into between the city and the appellant was binding upon both the city and the contractor; that the new route was not extra work under the contract; and that the city, by resolution or otherwise, was not authorized to pay a larger sum than the sum bid for the excavation, and that the payments made by the city which exceeded the contract price were wrongfully made and that the city should have credit therefor upon the final payment. The controlling question in the case, therefore, is, Was the new route extra work under the contract? If it was extra work, then the city was authorized to pay for the same at the cost thereof to the contractor plus ten per cent. If it was not extra work, then the city had no right to make a greater allowance to the contractor than the contract price.

The respondent argues that the recovery, if any, must be restricted to the terms of the contract entered into in the manner prescribed by the statute, charter, and ordinances authorizing the work; and cites *Arnott v. Spokane*, 6 Wash. 442, 33 Pac. 1063; *Moran v. Thompson*, 20 Wash. 525, 56 Pac. 29; *Paul v. Seattle*, 40 Wash. 294, 82 Pac. 601; *State v. Pullman*, 23 Wash. 583, 63 Pac. 265, 83 Am. St. 836, and numerous other cases. We think there can be no doubt about this rule. But the laws, and the city charter and ordinances passed in pursuance thereof, were fully complied with when the contract was entered into. The contract was therefore a valid one. *Criswell v. Directors School Dist. No. 24*, 34 Wash. 420, 75 Pac. 984; *Green v. Okanogan County*, 60 Wash. 309, 111 Pac. 226.

It is provided therein, as hereinbefore stated, that for extra work not provided for in the contract, the same shall be done by the contractor at actual cost and ten per cent added. So

that it is necessary for us to determine in this case whether the change in line was extra work under the contract.

The specifications provided, as we have seen above, that the city reserved the right to make any changes in lines, grades and plans that might be deemed advisable by the commissioner after the work was started. This provision relates to reasonable changes, and not to radical changes. In the specifications the words, "any change" in lines, grades and plans are used. But we cannot believe that this means any radical change in plans. For example: If the city had prepared plans and specifications for a pipe line 54 inches in diameter to be laid two feet or three feet beneath the surface of the soil through a level country, it could not reasonably be claimed that the city could modify the plans after a contract was let so that the pipe must be made ten feet in diameter and of a different character of material; nor that the pipe, instead of being laid three feet below the surface in a level country should be placed ten feet below the surface in a rough and uneven country. These would be radical changes, and certainly not contemplated by the city itself or by any contractor bidding upon the plans and specifications submitted. The plans and specifications for the work here undertaken were for a line about fifteen miles long. It was located in a definite place. The bid was made upon this location. Presumably, at least, the persons who bid upon the work examined the country over which the line was to be built, and learned in a general way the character of the soil and the depth to which the excavation was to be made. They made their bids with reference to this particular line. When the appellant came to construct the line, the city decided that the plans and specifications called for the location of a line which would be disadvantageous to the city and made a change in the route. It was a radical change. Instead of a line extending two and one-half miles east along South Seventy-Second street, it extended three and one-half miles south on Park avenue, and then two and one-half miles east

on Sheridan avenue and what is known as Cooper's road. In short, for a distance of six miles, it was two and one-half miles away from the line bid upon as stated in the plans and specifications. We think the evidence also shows that instead of being at approximately the same depth, it was required to be dug to a greater depth, through a soil known as hardpan, which was more difficult to work as the depth increased. And for the distance from South Seventy-Second street to Johnson's road, being six miles, was nearly two feet deeper than the line bid upon. We are satisfied that this changed route was extra work under the contract. If it was extra work, then clearly, under the law, the appellant was entitled to the cost of doing the same with ten per cent added. *Fransioli v. Thompson*, 55 Wash. 259, 104 Pac. 278. The fact that the engineers in charge of the work for the city recognized the change of the line as extra work, and the fact that the city authorities agreed thereto and passed a resolution recognizing it as extra work, is most persuasive, if not conclusive, that the work was in fact extra work under the contract. The fact that the work was extra work authorized the city thereafter to pay for the same at its cost to the contractor plus ten per cent, according to the terms of the contract. This being true, it was error for the trial court to refuse to allow the appellant the cost price of the extra work with ten per cent added.

The resolution of January 17, 1912, provides that the appellant shall be paid seventy cents per cubic yard for the excavation of trench on Park avenue from South Sixty-Fourth street to South Ninety-Sixth street; but this, the evidence shows, was agreed upon by the engineer of the city in charge of the work and the commissioner of light and water and the city council as the cost of the work with ten per cent added. The record shows that prior to the time this resolution was passed, the engineer for the city figured the cost of this excavation at sixty-two and three-tenths cents, which with the additional ten per cent, would bring the cost to sixty-eight

and five-tenths cents per cubic yard, according to the estimate of the city's engineer; while the appellant claimed that the actual cost was more than seventy cents. They thereupon agreed that the cost should be considered as seventy cents per cubic yard. We think they had a right to do this. *Hutchinson v. Mt. Vernon Water & Power Co.*, 49 Wash. 469, 95 Pac. 1023.

The trial court found that the difference for excavation between the contract price of forty-four cents and seventy cents, agreed upon for the excavation between South Sixty-Fourth and South Ninety-Sixth streets, amounted to $9,-895.30; and that, between South Ninety-Sixth street and Johnson's road, it amounted to $15,696.33, which amounts he deducted from the payments due the appellant. In deducting these items, we think the trial court erred. These amounts should have been allowed because they were for extra work at cost plus ten per cent.

It is strenuously argued by the appellant that he should have been allowed by the superior court extra pay for the slopes in excavating, and for hardpan and loose rock, under resolutions of the city council authorizing the same. We are satisfied, however, that for these items the appellant is not entitled to recover, because they were not extra work, for they are provided for in the contract. 2 Dillon, Municipal Corporations (5th ed.), § 813; *Wilkin v. Ellensburgh Water Co.*, 1 Wash. 236, 24 Pac. 460.

The contract defines excavation as follows:

"Excavation shall be classified as solid rock, loose rock and earth.

"Solid rock shall include all rock in place that cannot be removed without blasting; and also all boulders that exceed fourteen cubic feet in volume.

"Loose rock shall include all boulders not exceeding fourteen cubic feet and not less than one cubic foot in volume; provided, however, that said loose rock shall comprise more than 25 per cent of the volume of material removed in any one station before said classification will be allowed.

"All other material excavated, of whatever nature, shall be classified as earth.

"Excavation shall be paid for by the cubic yard, excavation measurement, and the price bid for excavation shall include the cost of excavation made for any purpose whatever, as well as the cost of depositing in fills and embankments, the refilling of trenches, the removal of surplus material, and necessary haul for making such necessary fills and embankments to the distance of 500 feet."

It is plain, from what we have already said, that the only extra work upon the whole contract was the work included in the distance from South Sixty-Fourth street to Johnson's road. When this was paid for at cost, plus ten per cent, it included the whole excavation for that distance. Whether the slopes were excavated or not, and whether loose rock was classified as hardpan or as solid rock, could make no difference. The cost of the work with ten per cent added was all that the appellant was entitled to collect for that distance; and for the remaining distance of the line, there was no extra work, because it was beyond the power of the city to change the contract in regard to these items, for both the city and the contractor were bound by the terms of the contract, which could not be changed without reletting in the manner provided by law. *Paul v. Seattle, supra; Tacoma Light & Water Co. v. Tacoma,* 13 Wash. 115, 42 Pac. 533.

The appellant also argues that because of the change in the depth of the ditch from Johnson's road to Meridian road, and from Meridian road to the reservoir, he should be allowed extra for that work. But as we have heretofore seen, the contract provided that the city might make changes in the lines and grades; that for such changes no allowance should be made the contractor except where the quantities of material were increased. In such case the contractor should be paid at the contract prices for the additional amount of material furnished and work done. The fact that the grade was changed slightly, was not an extra under the contract. This was a reasonable change, and one that no doubt was, or cer-

tainly should have been, anticipated by the bidders. It was not an extraordinary change in the grade. This was upon the line which was designated in the plans and specifications.

The appellant also makes claim for tamping. It appears that, when the large pipe was laid in course of construction, it was first rested upon blocks in the bottom of the cut. These blocks were afterwards removed, and it became necessary to tamp the earth around the bottom of the pipe and for some distance up the side of the pipe. The contract provides that, "where the pipe is in a town or city the trench shall be filled and thoroughly tamped and the surplus material removed." It is argued that there is no provision in the contract for tamping any part of the earth around the pipe outside of the city or in towns. But the contract provides that "all work shall be done in a first-class, workmanlike manner, according to maps, profiles, plans and specifications, and to the lines and grades, and in accordance with the instructions given by the commissioner." The contract taken as a whole clearly indicates that in cities and towns the filling should be tamped from the bottom to the top of the fill so as to leave the street solid. It was not necessary under the contract to so tamp outside of cities and towns for the benefit of streets or roads, but it was necessary to tamp the earth around the bottom of the pipe so as to hold the pipe solidly in place; otherwise, as the evidence shows, the pipe would settle or sag and not constitute a workmanlike job. We are satisfied that this was not extra work under the contract.

It is also argued by the appellant that interest should be allowed upon the amount found due from the time of the completion of the contract until payment. This no doubt is correct. *Parks v. Elmore*, 59 Wash. 584, 110 Pac. 381.

The judgment of the lower court is modified to the extent hereinbefore stated, so that the final judgment in the case in favor of the appellant shall be $42,418.65, with interest thereon from the 17th day of August, 1912. The cause is re-

manded with directions to the trial court to enter a judgment in favor of the appellant for that amount.

CROW, C. J., GOSE, MAIN, PARKER, MORRIS, CHADWICK, and FULLERTON, JJ., concur.

ELLIS, J., took no part.