[No. 11474. Department Two. April 28, 1914.]

INTERNATIONAL CONTRACT COMPANY, *Appellant*, v. THE CITY OF TACOMA, *Respondent*.[1]

MUNICIPAL CORPORATIONS—IMPROVEMENTS — CONTRACTS — "EXTRA" WORK—CONSTRUCTION. Under a contract for the construction of a city water system which provided that changes in the work might be ordered and that the contractor should be paid at the contract prices for only the actual amount of work done, at the prices fixed in the bid, and that extra work not contained in the plans and specifications should be done by the contractor at actual cost and ten per cent added, a change reducing the size of a tunnel, the work on which included excavation at $3 per cubic yard, and concrete masonry, at $10.50 per cubic yard, was not "extra work" under the contract to be paid for at actual cost and ten per cent added, although the cost was proportionally increased by the change, where the court could not say that the change was so radical that the work was entirely different from that contemplated in the contract, and there was no sufficient evidence to determine the amount of increase in the cost of the work.

SAME—CLAIM FOR EXTRA WORK—ESTOPPEL—PLANS AND SPECIFICATIONS. Under a contract for the construction of a city water system, providing for payment at the contract prices for only the actual

[1]Reported in 140 Pac. 373.

amount of work done, regardless of the approximate quantities stated; a claim for extra work not included in the plans and specifications cannot be made on account of the increase of a certain excavation from the approximate amount of 450 cubic yards to 3,500 cubic yards, when a computation from the plans and specifications could readily have been made showing that the excavation required was about 3,500 yards.

SAME—"EXTRA WORK"—LIABILITY OF CITY. "Extra work" under a contract for a city water system, by reason of increased cost through changes ordered, cannot be allowed where the city did not make the work more expensive by its own act, and the work was not inconsistent with the provisions of the contract fairly and reasonably construed.

SAME— CONTRACTS — CONSTRUCTION—EXTRAS—"FORCE ACCOUNT"— OVERHEAD EXPENSE. Under a contract for the construction of a city water system, providing that extra work shall be done by the contractor at actual cost with ten per cent added, commonly called "force account," a claim cannot be made for six per cent overcharge upon force account for office expenses, salaries, insurance, etc., where the extra work was less than one-fifth of the whole, and there was expert evidence to the effect that where force account was simply auxiliary to the contract for the purpose of providing the measure of compensation for extras, the actual cost of the work does not include overhead expense.

SAME—CONTRACTS—PAYMENTS—ESTIMATES — MISTAKE — DEDUCTIONS—ESTOPPEL. Payments made upon a contract for the construction of a city water system, upon estimates made by the city engineer and approved by the commissioner of public works, are not conclusive upon the city, in the absence of any such stipulation in the contract, so as to preclude the city from making deductions where previous excess payments were based upon mistakes made in the estimates; there having been no elements of estoppel by misleading the contractor to his prejudice.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered July 24, 1913, upon findings in favor of the defendant, in an action on contract, tried to the court. Affirmed.

*Walter M. Harvey* (*Bausman, Kelleher, Goodale & Oldham,* of counsel), for appellant.

*T. L. Stiles* and *F. M. Carnahan* (*Davis & Neal,* of counsel), for respondent.

PARKER, J.—The International Contract Company commenced this action in the superior court for Pierce county, against the city of Tacoma, to recover the sum of $33,885.52, claimed by it as a balance due from the city upon the construction of the head works, tunnels, and river crossing near there, of the city's Green river gravity water system. The city denied the facts, pleaded by the contract company upon which its claim was rested, and made a counterclaim for which affirmative judgment was demanded, claiming certain errors and mistakes in estimates upon which payments to the contract company were made during the progress of the work. A trial before the court without a jury resulted in findings and judgment in favor of the contract company for the sum of $1,041.18, from which it has appealed.

In January, 1910, the city council of Tacoma passed an ordinance proposing to the voters of the city, as an addition to its existing water system, a gravity water supply to be taken from Green river, at a point in King county, some thirty miles east of the city, to be conveyed to the city by gravity at an estimated cost of two million dollars. This proposal, having been submitted to the voters at an election held for that purpose, was duly ratified. Thereafter, plans and specifications for the construction of the head works, together with certain other work near there, were prepared, and bids invited for that portion, as a section of the work, to be constructed under one contract. Bids were invited and submitted upon the unit basis, "approximate quantities of work to be done" being stated in the instructions to bidders. Appellant submitted its bid as follows:

"The undersigned hereby proposes to furnish all the material and construct the headworks, tunnels and river crossing for a gravity water supply on Green river for the city of Tacoma, in accordance with the maps, profiles and plans on file in the office of the commissioner of light and water of Tacoma, and the attached specifications and contract, for the prices named in the following schedule:

HEADWORKS:

Excavating earth, per cu. yd..............$    .50
Excavating rock, per cu. yd...............   1.30
Concrete masonry, per cu. yd.............  10.50
Cement plaster, per sq. yd...............    .30
Steel reinforcing bars, per pound.........    .039
Structural steel, per pound...............    .062
Railroad rails, per pound....,...........    .035
Washout and regulating gates, in place, each 430.00
Steel pipe, per lin. ft....................  25.00
Timber in place, per 1000 ft. B. M.........  28.00
Tunnel excavation, per cu. yd............   3.00

TUNNEL:

Excavating earth, per cu. yd..............$   1.00
Excavating rock, per cu. yd...............   1.50
Concrete masonry, per cu. yd.............  10.50
Tunnel excavation, per cu. yd............   4.00
Timbering in place, per 1000 ft. B. M.......  28.00

RIVER CROSSING:

Excavating earth, per cu. yd..............$   2.00
Excavating rock, per cu. yd...............   4.00
Concrete masonry, per cu. yd.............  10.50
Kalemein pipe, per lin. ft.................   2.00
Steel pipe, per lin. ft....................  24.00
Blow-offs, in place, each.................. 100.00"

This was accepted by the city as the lowest bid, and thereupon a written contract was entered into accordingly.

Green river flows in a westerly direction where the work involved in this contract is located. The head works consist of a concrete dam across the river, an intake on the north side of the river, a tunnel at the intake, approximately 100 feet long, through a point of rock forming a natural wall at the edge of the river, and a settling basin at the westerly end of the tunnel. This tunnel is known as tunnel No. 1. Other work within the contract consists of tunnel No. 2, 1,200 feet long; tunnel No. 3, 275 feet long; conduits several hundred feet long between the settling basin and tunnel No. 2, and between tunnels No. 2 and No. 3, all on the north side of the river; and also a conduit across the river from the westerly

end of tunnel No. 3 to the southerly side of the river. The work was under the supervision of the city's commissioner of light and water and his authorized representatives upon the ground.

The specifications for the work contained the following:

"The city shall have the right to make any changes in lines, grades and plans that may be deemed advisable by the commissioner after the work is started and the contractor shall make such changes upon the order of the commissioner. No allowance shall be made the contractor on account of such changes, except where the quantities of materials are increased and in such cases the contractor shall be paid at the contract prices for the additional amount of material furnished and work done. The contractor shall be paid at the contract prices for only the actual amount of material furnished and work done, regardless of the approximate quantities as stated herein."

The contract proper contained the following:

"Witnesseth that the said contractor, in consideration of the covenants, agreements and payments hereinafter mentioned to be performed and made by said city, hereby covenant and agree under the penalty expressed in the attached bond bearing even date herewith, to furnish all the material and construct the headworks, tunnels and river crossing for a gravity water supply system on the Green river for the city of Tacoma in accordance with the attached proposal and specifications which are hereby declared and accepted as parts of this agreement, and to accept payment for the actual amount of material furnished and labor performed at the prices named in said proposal as full compensation under this contract.

"The contract prices shall include the furnishing of all machinery, appliances and tools, and all materials and labor and all other expenses necessary to construct the headworks, tunnels and river crossing complete according to the maps, profiles, plans and specifications on file in the office of the commissioner of light and water of said city, and the expense of maintaining the work in good condition until it is accepted by the commissioner. All items of labor, material and expense necessary to finish the headworks, tunnels and river

crossing complete that are not enumerated in the schedule shall be included in the prices bid for the different classes of work.

## "EXTRA WORK.

"Whenever during the progress of the work of said contract any work or material not contained in the plans and specifications therefor shall be ordered by resolution of the city council, the same shall be done or furnished by the contractor at actual cost and ten per cent added   .   .   .

"Payments shall be made in cash to the contractor monthly for work and materials actually done or put in place in construction, upon estimates issued by the engineer and approved by the commissioner of light and water; to the extent of 85 per cent of such work and materials; the remaining 15 per cent shall be delivered to the contractor when his contract has been fully completed and accepted by said city, after a thirty days operating test."

Appellant's bid, computed upon the estimate of approximate quantities made by the city, would have totaled about $65,500; but, owing to changes requiring additional work, authorized by resolution of the city council and agreed to be done by appellant at certain fixed prices, additional work which appellant was entitled to pay for, measured by cost and ten per cent added, commonly called "force account," and errors in the estimate of approximate quantities, resulted in the city actually paying to appellant for work done the sum of $219,963.48, to which $1,041.18, upon payment of this judgment, will be added.

Appellant's claim of balance due is rested largely upon the theory that certain changes, made by those in charge of the work in behalf of the city from that specified in the original plans, were so radical as to fall entirely without the terms of the contract and entitle appellant to compensation therefor measured by the reasonable value of such work rather than by the prices named in the contract. One of the largest items so claimed by appellant upon this theory relates to tunnel No. 1. As originally planned, this tunnel was to be 18 by 20 feet in size. For reasons deemed sufficient by those in charge

for the city, this tunnel was reduced to 8 by 10 feet in size. Appellant proceeded to construct the tunnel as directed, no specific understanding as to the compensation appellant was to receive therefor being had aside from the contract. We assume, for argument's sake, that those in charge for the city had authority to direct this change, though it does not seem to have been made by authority of a resolution of the council. This particular work was excavation at $3 per cubic yard, and concrete masonry at $10.50 per cubic yard, providing compensation therefor is to be measured by prices named in the contract. Manifestly, it must be so measured unless the change was so radical that the work may be said to be entirely different from that contemplated by the contract. Counsel for appellant argue that the diminished size of the tunnel rendered it much more difficult and expensive per cubic yard to remove the material therefrom than from a tunnel of the size originally planned. Touching this contention, the trial court found as follows:

"With reference to plaintiff's claim for $3,551.25 on account of changes in the plans of tunnel No. 1, intake and settling basin, and more expensive work necessitated thereby, there was no sufficient evidence upon which to determine the amount of increase in the cost of the work or upon which to base a charge against the defendant."

There is evidence tending to show that the driving of a tunnel eight feet by ten feet is proportionately somewhat more expensive than the driving of one 18 by 20, but a review of the evidence to which our attention has been called convinces us that, in this particular instance, the evidence was not such as to enable the court to say that the change was so radical as to take the construction of this particular tunnel out of the terms of the contract, so far as compensation therefor is concerned. We think the evidence as a whole calls for the finding made by the court upon this subject, and that the court was not in error in ruling that compensation for this work is not to be measured by reasonable value, but

by the quantity prices named in the contract. Clearly, it was not referable to force account, since it does not appear to have been ordered by the city council as extra work.

Another of the large items claimed by appellant of a similar nature is for excavation in the construction of the dam, intake, and settling basin. This claim, sought to be measured by reasonable value of the work, is rested upon the theory of excessive quantity of excavation required over that stated in the estimate of approximate quantity. In the original estimate, this quantity was stated to be approximately 450 cubic yards, when, in fact, it proved to be some 3,500 cubic yards. So far as appellant's claim is rested upon this increased quantity, the evidence plainly indicates that a reference to the plans accompanying the specification and a computation which could readily have been made therefrom would show that the quantity of excavation required was about 3,500 cubic yards. We think this, of itself, is enough to warrant the conclusion that appellant is not entitled to other than the contract price per cubic yard, so far as such claim is rested upon the excess of quantity over that stated in the city's estimate of approximate quantities. It is further argued by counsel that changes made in the settling basin and the excavation for the foundation of the dam were such as to render such excavation proportionately much more expensive than that shown by the original plans. The evidence upon this subject indicates that the changes in the quantity of excavation in fact were such as to render it proportionately less expensive, but there was other evidence indicating that it may have been somewhat more difficult, by reason of this change, to take care of the water in the river during the construction of the dam. Taking the evidence as a whole, we agree with the trial court that the expense of this excavation per cubic yard, including the construction of the dam and settling basin, did not increase the cost of the work per cubic yard to appellant. We are of the opinion that the court was warranted in measuring appellant's compensation for this

work by the prices fixed in the contract. The questions involved in all of these claims are almost wholly questions of fact. So far as they are governed by principles of law, we think the following observation in 2 Dillon, Municipal Corporations (5th ed.), § 813, are applicable:

"If a municipal corporation by its own act causes the work to be done by a contractor under a contract for an improvement to be more expensive than it otherwise would have been according to the terms of the original contract, or if the municipality orders and directs the contractor to perform work or furnish material or labor which is not within the contemplation of the original contract, it is liable to him, in the absence of stipulations to the contrary, for the increased cost or for the extra work. But to justify a recovery for extra work, the claim must not be inconsistent with the provisions of the contract when fairly and reasonably construed. If upon such a construction it appears that the work was intended to be compensated by the compensation provided thereby, there can be no recovery, or if it is within a provision of the contract specifying the rate to be charged for extra work of that nature, then the recovery, if any, is under the contract, and the amount is limited to the rates specified by the contract."

Our decision in the late case of *McHugh v. Tacoma*, 76 Wash. 127, 135 Pac. 1011, also lends support to the conclusions we here reach.

Another of the large items of appellant's claim is that of a six per cent overcharge upon force account; that is, a claim of six per cent upon the total of the force account in addition to the ten per cent, for appellant's office expenses, its officers' salaries, insurance, etc., which it insists is a part of the cost to it of the force account work. This work was less than one-fifth of the whole. We have noticed that, for work of this character, the contract provides that "the same shall be done or furnished by the contractor at actual cost and ten per cent added." If the contract had provided for appellant's entire compensation, to be measured by force account, and such work had been thereby other than incident to the contract as

a whole, there might be some ground for appellant's contention. Upon the theory that the contract was ambiguous in this respect, some expert testimony was received upon the subject. This testimony is not wholly free from conflict, but that which evidently seemed to the trial court most weighty, as it does to us, was to the effect that, where force account is simply auxiliary to the contract for the purpose of providing a measure of compensation for unforeseen things, the actual cost of such work does not include overhead expense of the nature here claimed. We agree with the trial court that, in view of the incidental nature of this force account work, and the amount of it as compared with the whole, it should not be held to include the items claimed by appellant. The authorities do not furnish much light upon this subject. The following, however, seem to lend support to the view we have here expressed: *Savannah, A. & N. R. Co. v. Oliver*, 174 Fed. 140; *Lexington & W. C. R. Co. v. Fitchburg R. Co.*, 9 Gray 226; *Isaacs v. Reeve* (N. J.), 44 Atl. 1.

It is contended by counsel for appellant that the trial court erred in allowing the city deductions from previous payments made to appellant. This contention is rested principally upon the theory that the payments from which such deductions were allowed the city were made upon monthly estimates of the city's engineer, approved by the commissioner, and were therefore conclusive upon the city. These deductions were claimed in the city's counterclaim, and partially allowed by the court, upon the theory that the previous excess payments were based upon mistakes made in the estimates upon which the previous payments were made. If such estimates are held to be final and conclusive upon the city, it is only because of an inference to be drawn from the terms of the contract touching payments, there being nothing therein specifically so providing. We are quite unable to understand upon what theory of right the city shall be prevented from having such mistakes corrected in an action of this nature. The authorities are not wholly in harmony upon

the subject, but we apprehend that such lack of harmony is more apparent than real. We are not able to see any element of estoppel in this case as against the city. Plainly, appellant was not misled to its prejudice, so far as this record shows. No evidence is called to our attention indicating that appellant was, by such estimates, led to settle with any subcontractor or for its supplies upon the basis of such estimates. The evidence indicates nothing more than the fact that appellant received more compensation than it was entitled to receive because of the erroneous estimates. We think the trial court was clearly right in its rulings upon this subject. Wait, Engineering and Architectural Journal, § 482; *Dyer v. Middle Kittitas Irr. District,* 40 Wash. 238, 82 Pac. 301.

Other items claimed by appellant and disallowed by the trial court are involved in this appeal. The correctness of the court's conclusions thereon, however, involve, in the last analysis, only questions of fact. Indeed, there is little else in any of the questions presented in this case. A somewhat painstaking review of all the evidence to which our attention has been called convinces us that the trial court's disposition of the case came as near rendering exact justice as was possible under the circumstances. The questions are much involved, the record very voluminous, and we are impressed with the fact that the learned trial judge gave to the case very painstaking consideration. We do not feel called upon to discuss the case in greater detail.

The judgment is affirmed.

CROW, C. J., MOUNT, MORRIS, and FULLERTON, JJ., concur.