(58 N. W. Rep. 514.)

---

CHAS. E. ERSKINE, *et al vs.* STEELE COUNTY.

Opinion filed November 8th, 1894.

**County Commissioners—Powers—County Warrants—Validity—Rights of Bona Fide Purchaser.**

The County of Steele was formed in the year 1883, out of the territory previously lying within the Counties of Traill and Griggs. In that year the commissioners of Steele County, without legislative authority, agreed with one M. that the latter should transcribe from the records of Griggs and Traill Counties, into the records of Steele County, such parts of such records as related to real estate situated in Steele County, for the agreed price of $2,010 in cash. It was further agreed that M. should receive, as compensation a county warrant sufficient in amount, when sold at the prevailing discount, to realize the contract price of $2.010. Under this arrangement a county warrant of Steele County was issued for the face amount of $2,680, and delivered to M., the additional sum included in the warrant being given to make good a prevailing discount upon Steele County warrants. A warrant was issued by Steele County officials to one B., for $389.77, which was issued wholly to make good a discount upon other warrants delivered to B. Both of the warrants were purchased by the deceased, Messena B. Erskine, during his lifetime. This action is upon both warrants. *Held: First*, that the warrants issued to M., was wholly illegal and void from its inception, for the reason that the commissioners of Steele County, in the absence of legislative authority, either general or special, to do so, were without power to enter into any such arrangement. Their contract with M., was *ulra vires*, and hence they had no power to issue said warrant to M. *Second*, such portion of the warrant to M., as represented discount upon Steele County warrants is illegal and void. The commissioners were without power to enter into an agreement for such discount. *Third*, the warrant to B., being wholly issued for discount, is void for the same reasons. *Fourth*, county warrants are nonnegotiable instruments, within the meaning of the law merchant, and hence the plaintiff, as a good faith purchaser of the warrants, occupies no better position than that occupied by the parties to whom the warrants were originally issued. Plaintiff cannot recover.

Appeal from District Court, Steele County; *McConnell*, J.

Action by Charles E. Erskine and William H. Crosby, administrators of the estate of Messena B. Erskine, deceased, against Steele County, on certain county warrants. From a judgment for plaintiffs, defendant appeals.

Reversed.

*George Murray*, (*F. W. Ames* of counsel,) for appellant.

The warrant to E. J. McMahon for transcribing records, was illegally issued. The county commissioners had no authority to contract for such services. *Rasmussen* v. *Board of County Commissioners*, 43 N. W. Rep. 3. Counties have only such powers as are expressly conferred upon them or necessarily implied. *McCormack* v. *Commissioners*, 2 N. W. Rep. 707; *Supervisors* v. *Sullivan*, 8 N. W. Rep. 12; *Merritt* v. *Batty*, 8 N. W. Rep. 559; *Gould* v. *Stevens*, 23 N. Y..463; *Perrin* v. *C. H. & Del. Co.*, 9 How. 172; *Bradley* v. *Mayor*, 20 N. Y. 312. The act of the county commissioners in adding discount to the warrants was illegal and the discount portion of the warrants is void. *Arnot* v. *City of Spokane*, 33 Pac. Rep. 1063; *Clark* v. *Des Moines*, 19 Ia. 199; *Foster* v. *Coleman*, 10 Cal. 279; *Bauer* v. *Franklin Co.*, 51 Mo. 205; *State* v. *Wilson*, 9 S. W. Rep. 155; *Dorsey* v. *Whitehead*, 1 S. W. Rep. 97; *Barton* v. *Swempton*, 44 Ark. 437; *Sharp* v. *Pulaski Co.*, 4 Dill. 209.

*Newman, Spalding & Phelps*, for respondent.

The commissioners had power to procure the transcription in question. Comp. Laws, § § 545, 592; *Webster Co.* v. *Taylor*, 19 Ia. 117. They also had power to contract for the building of a jail for the county. Section 607, Comp. Laws. Their power being otherwise unrestricted they could make any contract which would be valid if made by an individual. Dillon Munc. Corp. 472. *Brady* v. *Mayor*, 1 Barb. 584; *Kelley* v. *Mayor*, 4 Hill 263; *Jackson Co.* v. *Rundleman*, 100 Ill. 379. Had an individual made the contracts payable in gold coin, they would have been valid. *Sam* v. *Gluckauf*, 87 Am. Dec. 121, note. Counties have power to pay in money instead of warrants. *Martin* v. *Tyler*, 60 N. W. Rep. 392.

WALLIN, J. This action is brought to recover the amount purporting to be due according to the terms of certain county warrants issued by the officials of Steele County, and which were subsequently purchased by Massena B. Erskine, deceased, during his lifetime. The warrants were drawn on the general fund of the county, and were presented to the county treasurer for payment. Payment was refused for want of funds, and the warrants were then registered for payment. The warrants which are now contested are two in number, described as follows: A warrant dated November 19, 1883, for $2,680, issued and delivered to one E. J. McMahon; a county warrant dated March 31, 1884, for $389.77, issued and delivered to one Charles R. Black. The fact of issuing and delivering the warrants, and their sale to the deceased during his lifetime, is not controverted. The defense set out in the answer as to both warrants, when briefly stated, is that they were issued without authority of law and without lawful consideration. A jury trial was waived, and, after a trial upon the merits, the court filed its findings of fact and conclusions of law, and directed judgment for the plaintiff, whereupon judgment was entered for the full face amounts of said warrants, with interest added.

The findings are as follows: "(1) That the said defendant, on the 19th day of November, 1883, made and delivered to E. J. McMahon a certain county warrant or order upon its county treasurer, whereby said treasurer was directed to pay to said E. J. McMahon, or order, the sum of $2,680 out of the general funds of the treasury of defendant, not otherwise appropriated, and belonging to said county. That said county warrant or order is in the words and figures following, to-wit: 'Treasurer of Steele County: Pay to E. J. McMahon, or bearer, twenty-six hundred and eighty 00-100 dollars out of the general funds in the treasury, not otherwise appropriated, for transcribing records in Traill and Griggs Counties.' That said warrant was thereafter, for value, duly transferred to this plaintiff, and was on the 30th day of November, 1883, duly presented to the treasurer of said county defendant for payment, and payment was refused, and the

said warrant was thereupon endorsed: 'Presented for payment November 30th, 1883, but not paid for want of funds in treasury. Clarence J. Paul, County Treasurer.' That said warrant was so as aforesaid issued to said McMahon under and by virtue of a contract made and entered into by and between said McMahon and the said defendant, under and by virtue of which it was agreed that the said McMahon should transcribe for the defendant so much of the records of the Counties of Traill and Griggs as related to real property within the County of Steele for the sum of $2,010 in cash. That the said warrants of said county were, at the time, of the issue of said warrants, worth only seventy-five cents on the dollar; and the said warrant was so as aforesaid issued for the sum of $2,680, pursuant to, and in fulfillment of, the contract of the said defendant and the said McMahon. That no part of said warrant has been paid. (2) That on the 31st day of March, 1884, defendant made, executed, and delivered to Charles R. Black its certain county warrant or order upon its treasurer, whereby said treasurer was directed to pay to said Charles R. Black, or order, the sum of $389.77 out of the general funds in the treasury of the defendant, not otherwise appropriated, which said county warrant or order was in the words and figures following, to-wit: 'Treasurer of Steele County. Pay to Charles R. Black, or bearer, three hundred and eighty-nine and 77-100 dollars, out of the general funds in the treasury, not otherwise appropriated, for amount due on county building account of, discount on orders.' That thereafter, and on the 31st day of March, 1884, said warrant was presented to the treasurer of the defendant for payment, and payment thereof refused, and said warrant indorsed as follows, to-wit: 'Presented for payment March 31st, 1884, but not paid for want of funds in the treasury, and registered for payment March 31st, 1884.' That said warrant was so as aforesaid issued to said Black for the balance due him under and by virtue of the contract made and entered into between said Black and the defendant, whereby the said Black agreed to erect for the defendant a certain jail building, for which it was, under and

by virtue of said agreement, agreed that he should receive $1,210 in cash, and that the defendant should issue its warrant for sufficient to cover the discount on its warrants at the then market price of same, and to make the amount paid by such warrants equal to the sum of $1,210 in cash. That said warrant so as aforesaid issued to said Black was the balance due him under and by virtue of said contract. That said warrant was thereafter, for a valuable consideration, duly transferred to this plaintiff, and no part of the same has been paid.

"On the foregoing facts I find as conclusions of law: Conclusions of law: (1) That the warrant or order mentioned and described in the first finding of fact herein is a valid, existing indebtedness of the said defendant, and that the plaintiff is entitled to recover thereon the sum of $2,680, with interest thereon from the 30th day of November, 1883, amounting to the sum of $4,526.24. (2) That the warrant mentioned and described in the second finding of fact herein is a valid, existing indebtedness of the defendant, and the plaintiff is entitled to recover thereon the sum of $389.77, with interest from and after the 31st day of March, 1884, amounting to the sum of $649.26. That plaintiff is entitled to judgment for his costs and disbursements herein, to be taxed by the clerk."

The findings of fact are not assailed in this court, and the appellant assigns error only upon the conclusions of law found by the trial court, to the effect that the plaintiff was entitled to judgment. It is conceded that the territory now embraced within the boundaries of Steele County was formerly, and until March, 1883, included within the limits of the counties of Traill and Griggs. It appears from the first finding of fact that the warrant issued to McMahon for the lump sum of $2,680 was issued in accordance with the terms of a contract between McMahon and the county commissioners, but upon considerations which were distinct and independent in their nature. Under the contract, McMahon was to transcribe from the records of Traill and Griggs Counties such parts thereof as related to real estate

situate within the county of Steele; and by the terms of the contract a warrant was to be delivered to McMahon, in payment for the work, sufficiently large to yield the contract price, taking into account the discount at which the warrant would or could be sold in the market. In short, the commissioners agreed to issue, and did issue, a warrant which would yield, when sold in the market, $2,010 in cash, which was the contract price for the work. County warrants are nonnegotiable paper, within the meaning of the law merchant, and hence the plaintiff purchased the warrants subject to whatever defenses were available as against the parties to whom they were originally made payable. The plaintiff has all the rights which the original holders of the warrants had, but has no other or different rights. Was the warrant in question a valid warrant when issued? We think this question must be answered in the negative. In our opinion, the warrant was issued without a valid consideration, without authority of law, and in defiance of the law. Prior to issuing the warrant in question there never had been any special legislation clothing the commissioners of Steele County with power to contract for a transcription of the records such as that under consideration, or any other. Some four years after the warrant to McMahon was issued, a general statute was enacted by the territorial legislature, expressly authorizing all county commissioners to procure such work to be done. Comp. Laws, § 545. This statute cannot, of course, be invoked in aid of the respondent's contention. If the enactment has any bearing, it tends to show that, in the opinion of the legislature at least, the power did not exist at the time the commissioners of Steele attempted to exercise it. Counsel for respondents cite Comp. Laws, § 592, and *Kilvington* v. *City of Superior*, (Wis.) 53 N. W. 487, and other cases, none of which appear to us to be in point. Subdivision 5, § 592, Comp. Laws, empowers county commissioners to furnish necessary blank books, blanks, and stationery to certain county officers, including registers of deeds; but such language cannot possibly he stretched suffiently to cover an authority such as respondent is contending

for. It does not appear that McMahon was ever register of deeds of Steele County; much less does it appear that the commissioners were empowered by the section cited, or by any law, usage, or custom then in existance, to compensate the register of deeds out of county funds for any entries or transcriptions made in his official record for the benefit of private parties. The precise opposite is true. The statute in terms makes it the duty of registers of deeds to place upon record certain documents and muniments of title at the request of private parties and at their expense, not exceeding the sums prescribed as fees in the statute. It was the official duty of the register of deeds in Steele County, his fees therefor being tendered, to place any and all such papers upon record upon presentation to him of the original papers or properly certified copies thereof. Comp. Laws, § § 624-632. When so entered of record, such record became notice to the world, and could, under certain circumstances, be used in court as evidence. Id. § § 5309-5311. Whether the transcription made by McMahon would or would not possess any legal validity as notice, or otherwise, is unnecessary to decide in this case; but, to say the least, there is grave reason to doubt the legal value of such transcribed records. In the case of *Kilvington* v. *City of Superior*, cited by counsel, the court held that the general power conferred upon village trustees to "appoint a board of health, prevent the deposit of unwholesome substances, and prevent or abate nuisances is sufficient to authorize a contract for the erection of a crematory for the consumption of any matter calculated to effect the health or comfort of the community." The reason of this holding is plain. While the authority to erect a crematory was not expressly conferred by the legislature upon the trustees, such authority was implied if necessary in carrying out the power to abate nuisances, etc., which power was given in clear terms. But we see no analogy in the case cited to the case at bar. The right to enter into a contract such as that concluded with McMahon was not expressly conferred upon the commissioners, nor was such authority necessary or at all appropriate to the

execution of any power vested in the commissioners by any law of the territory then existing. In the absence of legislative authority authorizing it, any such contract was, in our opinion, clearly *ultra vires* in character. We therefore hold that the warrant was wholly void from its inception. It was issued without authority of law, and upon no legal consideration. *Rasmussen* v. *Board*, (Minn.) 43 N. W. 3; *Pugh* v. *Good*, (Or.) 23 Pac. 827.

We are equally clear that so much of the McMahon warrant as represented discount ($670) is illegal and void upon independent grounds. Essentially the same question has been frequently presented to courts in other jurisdictions, and the authorities, as far as we have examined them, are unanimous in condemning such discount transactions. Judge Dillon, in his learned treatise upon Municipal Corporations (volume 1, 4th Ed., § 503.) says: "Without express authority from the legislature, a municipality cannot discount its warrants for more than the sum actually due the claimant; and as to the excess they are void, and the holder will be treated only as the equitable assignee of the valid, legal claim of the payee." In *Foster* v. *Coleman*, 10 Cal. 278, a claim for services to the amount of $1,650 was allowed by the board of supervisors. County warrants of the county were then at a discount, and worth only 40 cents on the dollar. The board ordered a warrant to issue for a sum which, at the prevailing discount, would sell for $1,650, the amount due the claimant. Upon such order the warrant issued. A taxpayer of the county brought suit, and the county treasurer was enjoined from paying the warrant. The Supreme Court, in the course of its opinion, referring to the order of the board directing the warrant to issue said: "The effect of the order was to create a debt or liability on the part of the county, and this the supervisors were not empowered to do for any purpose except as provided by law. Their action was entirely without authority, and all together indefensible." The settlement and allowance of an illegal claim against the county when made by a county board, has no more conclusive effect than such an adjnstment would have if made by private

persons. See *Commissioners* v. *Keller*, 6 Kan. 511. In a recent case, clearly in point, the Supreme Court of the state of Washington, in referring to the act of a municipality in discounting its own warrants, uses the following language: "Such a proceeding is manifestly beyond the the scope of legitimate corporate power, and a practice of that character might lead to ruinous results. City warrants are evidences of indebtedness, or promises to pay, and are payable with interest prescribed by law; and the corporation cannot cast upon the taxpayers any further burden in respect thereto, and the courts have uniformly, as far as we are advised, disapproved of any effort to do so." *Arnott* v. *City of Spokane*, (Wash.) 33 Pac. 1063. See, also, *Clark* v. *Des Moines*, 19 Iowa, 199; *Bauer* v. *Franklin Co.*, 51 Mo. 205; *Skirk* v. *Pulaski Co.*, 4 Dill. 209, Fed. Cas. No. 12,794. The authorities cited, and others to the same effect, are severe in their animadversions upon discount transactions, when attempted by municipal corporations in endeavoring to bring their depreciated warrants up to par. The principal ground upon which the cases rest is the essential illegality and want of power in the governing body to enter into such financial transactions; and the cases uniformly and strenuously condemn all attempts to engage in such discounts as being highly dangerous, and likely to lead to disastrous results.

Respondents' counsel contends that the cases cited should be distinguished from the case under consideration for the reason as counsel claims, that it does not appear in such cases that the discount was given as a result of a contract made in advance to do so. This contention, we think, is not true in fact of all the cases (see *Arnott* v. *City of Spokane*;) but if it were true, we think the cases cited are strictly in point. To our mind it is a self evident proposition that, if the law forbids county boards to allow claims, and issue warrants to make good their depreciated paper, for the reason that such discount transactions are vicious, dangerous, and wholly without authority of law, for the same reason county boards would be without authority to enter into contracts to issue such warrants. It would certainly be a signal

and dangerous perversion of fundamental principles of law to sanction a transaction which is clearly in violation of law upon the ground that it is done under a contract to do the illegal act. If the thing done is without authority of law, the agreement to do it must be equally so, and for the same reason. The act of issuing discount warrants to bring depreciated municipal orders up to par is also, in our opinion, distinctly usurious in character, inasmuch as such transactions, in their practical operation, if carried out, compel the corporation to pay a bonus upon deferred payments above the rate of interest established by statute. In all points of view, such discount transactions are illegal, as well as vicious and dangerous in their tendencies.

What we have written upon the discount feature of the McMahon warrant renders it unnecessary to comment upon the warrant referred to in the second finding of fact. That warrant is void also for the reason that it was issued to make good a discount bonus, and for no other consideration whatever. It follows that the judgment entered below must be reversed, and the action dismissed. All concur.