STATE EX REL. CASE, RESPONDENT, *v.* BOLLES ET AL., APPELLANTS.

(No. 5,715.)

(Submitted June 17, 1925. Decided June 29, 1925.)

[238 Pac. 586.]

*Mandamus—Counties—Registered Warrants—Call for Payment—Time Limit—Failure to Present in Time—Effect—Appeal—Implied Findings.*

Findings—When Implied.
  1. On appeal from the judgment in a proceeding in *mandamus,* where the court did not make findings of fact, the facts necessary to support the judgment will be deemed to have been made under the doctrine of implied findings.

Counties—Registered Warrants—Failure to Present for Payment Within Time Limit—Effect.
  2. While county warrants are not negotiable instruments in the sense of the law-merchant, and the transferee takes them subject to all legal and equitable defenses to them which existed in the hands of the payee, failure of the transferee to re-present a registered warrant within sixty days after it was called for payment (Rev. Codes, sec. 4758) does not render it invalid and may not be relied upon as a defense in an action to compel payment.

[74 Mont. 54.]

Same—Registered Warrants—Failure to Present for Payment Within Time
—Statute—Construction.
3. *Held,* that the word "may" appearing in section 4758, Revised
Codes, which provides that the board of county commissioners *may*
on application of the holder of a warrant who failed to re-present a
warrant within sixty days after issuance of the call for its payment,
order the county treasurer to pay it, means *must* or *shall.*

Same—Penalty for Failure to Present Registered Warrants Within Speci-
fied Time—Loss of Interest.
4. The only penalty a holder of a registered warrant incurs, under
section 4758, *supra,* for failure to re-present it for payment within
sixty days after issuance of the call is loss of interest thereon.

Same—Failure to Make Timely Demand for Payment of Registered War-
rant—Insolvent Bank—Effect on County's Liability.
5. Where the board of county commissioners had wrongfully refused
to issue an order for the payment of a warrant not re-presented for
payment until after the sixty-day period provided for in section 4758,
Revised Codes, had expired, and thereafter the bank in which its
funds were deposited became insolvent, the county was not discharged
from liability thereon under section 8593 by the holder's neglect to
make timely demand for payment, since the detriment suffered by it
was traceable to its improper refusal and not to the holder's failure
to act.

Same—Warrants—Where Payable.
6. County warrants must be presented for payment to the county
treasurer, and he must pay in cash or by check acceptable to the
holder; he is without authority to issue a call for the payment of
registered warrants "at any of the banks of the county," and county
depositories may not pay out county funds to themselves or others
without a check from the treasurer.

Same—Warrants on Fund Abolished by Law—Payment Out of General
Fund, When.
7. Warrants drawn upon a county fund which was abolished by Act
of the legislature after their issuance, provision being made for their
payment out of the general fund, were properly ordered paid out of
the latter fund.

---

Appeal and Error, 4 C. J., sec. 2728, p. 778, n. 75.
Counties, 15 C. J., sec. 310, p. 602, n. 75; sec. 311, p. 603, n. 90; sec.
312, p. 605, n. 38 New; sec. 313, p. 606, n. 55 New.
Statutes, 36 Cyc., p. 1161, n. 36.

*Appeal from District Court, Golden Valley County, in the
Fifteenth Judicial District; O. F. Goddard, a Judge of the
Thirteenth District, presiding.*

APPLICATION for *mandamus* by the State, on the relation
of Dana L. Case, against H. A. Bolles, as County Treasurer
of Golden Valley County, and the Board of County Com-
missioners of such county. From a judgment for relator, de-
fendants appeal. Affirmed.

---

2. See 3 R. C. L. 849.

*Mr. Stuart McHaffie,* County Attorney of Golden Valley County, and *Mr. Henry C. Smith,* for Appellants, submitted a brief; *Mr. Smith* argued the cause orally.

The relator is not in the situation of a *bona fide* holder for value, and the warrants in his hands are subject to all the defenses which they would be subject to in the hands of the Farmers' & Merchants' State Bank. (*Clark* v. *City of Des Moines,* 19 Iowa, 199–213, 87 Am. Dec. 423; *National Bank of Mills* v. *Herold,* 74 Cal. 603, 5 Am. St. Rep. 476, 16 Pac. 507; *Wall* v. *County of Monroe,* 103 U. S. 74, 77, 26 L. Ed. 430 [see, also, Rose's U. S. Notes]; *Leach* v. *County of Wilson,* 62 Tex. 331; *State* v. *Treasurer,* 22 Ohio St. 144; *School Directors* v. *Fogelman,* 76 Ill. 189; *Goodwin* v. *East Hartford,* 70 Conn. 18, 38 Atl. 876; *First Nat. Bank* v. *Elgin,* 136 Ill. App. 453; *Bardsley* v. *Sternberg,* 17 Wash. 243, 49 Pac. 499; *Savings Bk. & Trust Co.* v. *Gelsbach,* 8 Wash. 497, 24 L. R. A. 359, 36 Pac. 467; *Mayor* v. *Ray,* 19 Wall. 468, 22 L. Ed. 164 [see, also, Rose's U. S. Notes]; *District of Columbia* v. *Cornell,* 130 U. S. 655–661, 32 L. Ed. 1041, 9 Sup. Ct. Rep. 694; *Hill* v. *Memphis,* 134 U. S. 198–204, 33 L. Ed. 887, 10 Sup. Ct. Rep. 562; *Coffin* v. *Kearney County Commrs.,* 114 Fed. 518; *People* v. *El Dorado County,* 11 Cal. 170; also, 2 Daniels on Negotiable Instruments, sec. 427, p. 451.)

The courts hold that the purchaser for value of public securities is charged with notice of the power and authority to issue. He is conclusively presumed to know the law of the state, both constitutional and statutory, bearing on the power of the public corporation. (Abbott on Public Securities, sec. 232, p. 475; *Travelers' Ins. Co.* v. *Township of Oswego,* 55 Fed. 361; *National Bank of Commerce* v. *Granada,* 48 Fed. 278; *McClure* v. *Township of Oxford,* 94 U. S. 429, 24 L. Ed. 129.)

Warrants are of the nature of any other order for the payment of money, and must be presented for payment

within the time fixed by the law for that purpose, and if a failure to so present them for payment results in their nonpayment, because of a loss of the fund on which they are drawn (as, for instance, the closing of the depository bank), then the loss must fall on the party responsible for the failure to present the same for payment, just as in the case of a bank check, draft, bill of exchange or any other similar order for the payment of money. (Sec. 8593, Rev. Codes 1921; *Greeley* v. *Cascade County,* 22 Mont. 580, 57 Pac. 274; *Anderson* v. *Rodgers,* 53 Kan. 542, 27 L. R. A. 248, 36 Pac. 1067.)

The burden of proof is upon the holder of the check to show that no loss or injury has resulted to the maker through the delay in making presentment. (*Holmes* v. *Briggs,* 17 Am. St. Rep. 810, note; *Watt* v. *Gans,* 114 Ala. 264, 62 Am. St. Rep. 99, 21 South. 1011.)

By the terms of the calls these warrants were payable at the banks, without the necessity of exchanging the same for checks. In other words, the warrants themselves had all of the attributes of checks on the banks. Strong had personal knowledge of this, as he paid some of the warrants when presented. In the case of *Industrial Bank* v. *Bowes,* 165 Ill. 70, 56 Am. St. Rep. 228–231, 46 N. E. 10, Mr. Justice Craig quotes with approval the following from Story on Promissory Notes, section 497: "If the bank has failed or become bankrupt he (the drawer) will be discharged to the extent of the loss he has sustained." (See, also, *Industrial Trust Co.* v. *Weakley,* 103 Ala. 458, 49 Am. St. Rep. 45, 15 South. 854; *Scroggin* v. *McClelland,* 37 Neb. 644, 40 Am. St. Rep. 520 and notes, 22 L. R. A. 110, 56 N. W. 208.)

During the entire period of the two calls of registered warrants the county of Golden Valley had a credit balance in the Farmers' & Merchants' State Bank sufficient to pay in full all of those in question, and during the entire period of the first call the county's money and these warrants were both held by that bank; that is to say, the bank held and

owned certain warrants which were payable there at the banking house, and the bank had money of the county, subject to instant withdrawal, sufficient to pay said warrants; and the warrants were, by order of the county treasurer, payable at the bank, on demand. Our contention is, that this situation discloses a state of facts which amounts, in effect, to payment of the warrants.

Section 7446, Revised Codes, provides: "An obligation for the payment of money is extinguished by a due offer of payment, if the amount is immediately deposited in the name of the creditor, with some bank of deposit within this state, of good repute, and notice thereof is given to the creditor." Under a Code provision similar to this section, the supreme court of California held that a deposit in a bank amounted to a payment. (*Trinity County Bank* v. *Haas*, 151 Cal. 553, 91 Pac. 385; *Miller* v. *Irby's Admr.*, 63 Ala. 477–482; *Lionberger* v. *Kinealy*, 13 Mo. App. 4.)

In the case at bar the call declared that the warrants were payable at the bank; this in effect amounted to a draft on the bank for the amount of the warrants. Strong, the cashier, refused to honor the call; hence the notes are paid. (See, also, *Shipp* v. *Stacker*, 8 Mo. 145; *Aetna Nat. Bank* v. *Fourth Nat. Bank*, 46 N. Y. 82, 7 Am. Rep. 314.) "Whenever the hand that is to pay is the hand that is to receive, that is payment and satisfaction, as between the parties, even at law." (*Grayble* v. *Y. & G. T. R. Co.*, 10 Serg. & R. (Pa.), 269, 273; *Highland Turnpike Co.* v. *McKean*, 11 Johns. 98; *Sampson* v. *Fox*, 109 Ala. 662, 55 Am. St. Rep. 950, 19 South. 896.)

*Messrs. Shea & Wiggenhorn*, for Respondent, submitted a brief; *Mr. R. G. Wiggenhorn* argued the cause orally.

Citing: *Klein* v. *Board of Supervisors*, 51 Miss. 878; *State ex rel. Board of County Commrs.* v. *District Court*, 62 Mont. 275, 204 Pac. 600; *United States ex rel. Huidekoper* v. *Macon County Court* (Mo.), 75 Fed. 259; *Western Town Lot Co.* v. *Lane*, 7 S. D. 1, 62 N. W. 982; *Hebron Bank* v. *Lawrence*

*County,* 109 Miss. 397, 69 South. 209; *Ward* v. *Piper,* 69 Kan. 773, 77 Pac. 699; 28 Cyc. 1573; 34 Cyc. 748; Abbott's Public Securities, sec. 447, 458; 15 C. J. 605, 606.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

On August 21, 1924, relator filed, in the district court of Golden Valley county, a petition, supported by his affidavit, for a writ of mandate to compel the respondent board of county commissioners to forthwith levy a sufficient tax to take up, pay and discharge certain warrants which relator had theretofore purchased and were drawn upon the several funds of the county as follows: General fund, $7,652.31; contingent fund, $6,205.67; road fund, $3,092.35; bridge fund, $4,522.57; insect fund, $3,892.96; school district 46M, $90; school district 86, $369.75; school district 7, $1,991.69; school district 45S, $609.55; school district 35, $642.75; school district 6, $3,208.25.

Thereupon an alternative writ of mandate and order to show cause was duly issued and served upon defendants, and, without in any manner challenging the sufficiency of the petition or the right to so proceed, defendants answered, admitting the issuance of the warrants, their registration and nonpayment, and the county's repudiation thereof as not valid claims against the county at the time of the commencement of this proceeding. The answer then sets up four special defenses, the nature of which will sufficiently appear hereinafter; these were denied by replication.

A hearing was had on the petition and answer. No request was made to the court to make findings, and, after hearing the testimony, the court merely found generally that "all of the allegations set forth in the affidavit upon application for writ of mandate herein are true, and the respondents not having shown any cause why they have not done as commanded, * * * the relator is entitled to the relief sought." The court thereupon entered judg-

ment in favor of relator, and a peremptory writ was issued thereon, commanding the board of county commissioners to recognize the warrants as valid, and to make provision and levy a sufficient tax to pay all of said warrants, and to charge the insect pest warrants to the general fund of the county. It also required the treasurer to give preference to these warrants in the order of their registration and to pay the amounts thereof out of the several funds indicated. From this judgment defendants have appealed.

Under the doctrine of implied findings, the particular [1] facts necessary to support the judgment will be deemed to have been found by the trial court. (Secs. 9368, 9369, Rev. Codes 1921; *Haggin* v. *Saile,* 23 Mont. 375, 59 Pac. 154; *Bordeaux* v. *Bordeaux,* 32 Mont. 159, 80 Pac. 6.)

The court impliedly found that the allegations of no one of the special defenses had been proven. There is no material conflict in the testimony and, without cumbering this opinion by setting out evidence, it is sufficient to say that the following facts in support of the judgment were fully established and found by the court:

All of the warrants were regularly issued to individuals on the approval of valid claims against the county, prior to December 15, 1922; they were duly presented to the treasurer, marked "Not paid for want of funds," and duly registered. After the collection of taxes in the year 1922, the county had abundant funds for the payment of these warrants. These funds were distributed among the four banks of the county, all of which were designated as county depositories, and bonded to the county and treasurer for the safekeeping and payment of the funds on proper order of the treasurer, in accordance with the provisions of section 4767, Revised Codes of 1921. The bulk of the funds, however, was deposited with the Farmers' & Merchants' State Bank of Ryegate. All of these banks were in such a critical financial condition at all times mentioned in the testimony that, had the treasurer at any time issued checks upon these

several banks in proportion to the deposits therein, as was his custom in checking against the county deposits, and for the amount of these warrants, not one of the banks would have paid such checks upon presentation, but would have been forced to suspend business.

After the tax money had come in, the treasurer advised one Strong, cashier and manager of the Farmers' & Merchants' State Bank, that under the law he was required to make a call of outstanding registered warrants. Strong then conceived the idea of getting these warrants into "friendly hands," prevent their re-presentation, and thus "save" the banks of the county. In all that he did pursuant to this plan, the county officials co-operated with him. His bank thereupon, and before the making of the call, purchased these warrants from the original payees; for this purpose it borrowed money from the Union Bank & Trust Company of Helena and the Northwestern National Bank of Minneapolis, and in each instance pledged a portion of the warrants as collateral security. On December 15, 1922, the treasurer gave the requisite notice of call, but therein stated that the warrants would on presentation be paid "at any of the banks of the county *or* at the office of the county treasurer." This call was made solely for the purpose of technically complying with the law, but with no intention that the warrants would be re-presented for payment.

In February, 1923, Strong went to Minneapolis and negotiated with relator for the sale of the warrants, and in doing so represented that the county was in good standing, and that the warrants would be paid after the fall collection of taxes. He presented a statement from the treasurer to the same effect, and "intentionally" and "advisedly" refrained from telling relator of the call in December. Relying upon the statement of Strong and that of the county treasurer, and with no knowledge of the fact that the warrants had been called for re-presentment and payment, re-

lator consummated the purchase on March 4, 1923, or more than sixty days after the first publication of the call.

In April, 1923, relator received information of the call, and thereupon wrote the county treasurer, inclosing a list of the warrants held by him. On April 13 a deputy treasurer answered, inclosing copies of calls made since the registration of these warrants, and advising relator that another call would be shortly made, and "earnestly requested" him to send his warrants to the office immediately. However, the treasurer then answered relator's inquiry personally, stating that the warrants were subject to payment, but continuing: "I feel it my duty to request all parties who hold a considerable amount of warrants that they view the situation in a businesslike way." He then explained something of the banking situation in the county, and asserted that the banks were protecting the county's interests, and assured relator that "there is the best of prospects that all outstanding warrants will be met at taxpaying time this fall."

The suggestion by the treasurer that he wait until fall did not meet with the approval of relator, and he immediately came to Montana, presented his warrants at the treasurer's office, and demanded payment in cash. He was informed that payment in cash was out of the question, and that, if he insisted on payment, checks would be issued upon the banks of the county, but would not be honored if presented, but was again assured that his warrants would be paid in the fall after the tax money came in. The Farmers' & Merchants' Bank paid to relator the amount of interest on the sum total represented by the warrants from the date of call to April 24, and the county attorney and chairman of the board of county commissioners agreed that the board would pass a resolution directing the treasurer to pay the warrants out of the first funds available, assuring the relator that the law required the board to do so. On the same day a call was made for the re-presentation of warrants registered subsequent to those held by relator, but

the county attorney explained to relator in writing that "the banks have notified our county treasurer that they cannot pay the warrants and can stand no further withdrawals until fall." He further stated, without reference to the fact that the warrants held by relator could not be paid until reinstated by the order of the board, that, "if these warrants are presented at the present time, you will be required to take a check on the county depository banks for them, and it is within my personal knowledge that the banks will protest those checks," but again assured relator that "when fall comes the banks will be glad to honor such checks."

With this situation staring him in the face, relator returned to Minneapolis. In the fall all of the county depository banks failed; their indemnifying bonds were found to be worthless; the board of county commissioners refused to pass the resolution as agreed, and repudiated liability on the warrants.

1. Defendants assert that the relator is not in the situation [2] of a *bona fide* holder for value, and that therefore the warrants in his hands are subject to all defenses which they would be subject to in the hands of the Farmers' & Merchants' State Bank.

It is well settled that, while county warrants are negotiable in form and therefore transferable by delivery and authorize the holder to demand payment and to maintain an action thereon in his own name, "they are not negotiable instruments in the sense of the law-merchant, so that, when held by a *bona fide* purchaser, evidence of their invalidity or defenses available against the original payee would be excluded. The transferee takes them subject to all legal and equitable defenses which existed to them in the hands of such payee." (*National Bank* v. *Herold,* 74 Cal. 603, 5 Am. St. Rep. 476, 16 Pac. 507; *Wall* v. *County of Monroe,* 103 U. S. 77, 26 L. Ed. 430 [see, also, Rose's U. S. Notes]; *Erskine* v. *Steele Co.,* 4 N. D. 339, 28 L. R. A. 645, 60 N. W.

1050; 1 Daniel on Negotiable Instruments, 5th ed., sec. 427, p. 452.) And it is stated broadly in *Coffin* v. *Kearney County Commrs.* (C. C.), 114 Fed. 518: "In an action brought by the holder against the maker, in case of refusal to pay, all the defenses available, or to which they were subject in the hands of the original payee, may be taken advantage of by the defendant." (See, also, *People* v. *El Dorado County,* 11 Cal. 170; *Travelers' Ins. Co.* v. *Oswego* (C. C.), 55 Fed. 361; *National Bank* v. *Granada* (C. C.), 48 Fed. 278; Abbott on Public Securities, sec. 232, p. 475.)

In no one of the causes cited, however, was an attack made upon the warrant under consideration except for invalidity at the time of its issuance, and this is also true of *McClure* v. *Township of Oxford,* 94 U. S. 429, 24 L. Ed. 129 [see, also, Rose's U. S. Notes], cited by defendants, in which it is declared that "every man is chargeable with notice of that which the law requires him to know, and of that which, after having been put on inquiry, he might have ascertained by the exercise of reasonable diligence." The warrants in question here were unquestionably valid at the time of their issuance and at the time of the call in December, 1922.

Section 4758, Revised Codes of 1921, provides that, if [3] warrants called for payment "be not re-presented for payment within sixty days from the time of the notice hereinbefore provided for is given, the fund set aside for the payment of the same must be by the treasurer applied to the payment of unpaid warrants next in order of registry," and section 4754 provides that, "from the first publication or posting of such notice [of the call] such warrants cease to draw interest."

2. Conceding that relator was chargeable with notice of these provisions of our statutes, and therefore with notice that at the time he purchased these warrants the period of sixty days after first publication of the call had expired, and that the defenses which the county then had to said

warrants in the hands of the seller are available to it against relator, what was the status of the warrants at that time?

With reference to county warrants we have statutory provisions for the levy of taxes for the various purposes of county government and the creation of the several funds on which these warrants are drawn. (Sections 1617, 1704, section 4465, subd. 13, section 4504, as amended by Session Laws of 1923, p. 44; section 4632, as amended by Laws of 1925, p. 253, *etc.*) Warrants must be drawn on the fund against which they are a charge, and, if on presentation "the fund is insufficient to pay any warrant, it must be registered and thereafter paid in the order of its registration." (Section 4612.) Under the provisions of sections 4625 and 4753, warrants so registered bear interest at the rate of six per cent per annum. When sufficient moneys become available for the payment of registered warrants, the treasurer must publish or post notice calling the warrants for payment and describing them; they then cease to bear interest from the date of the first publication or posting, and are to be paid in the order of their registration. (Sections 4754, 4755.) The money necessary to pay these called warrants is set apart by the treasurer (sec. 4758) and held in trust for a period of sixty days, when, as pointed out above, if the warrants so called are not re-presented for payment, the money must be applied to the payment of unpaid warrants next in order of registration.

There is nothing in our statutes intimating that section 4758 is intended to operate as a statute of limitation so that recovery on such warrants is thereafter barred or authorizing the board of county commissioners to cancel such warrants after the sixty-day period; in fact, section 4758 negatives the existence of any such authority, for it is therein provided that "the board of county commissioners may, on application and presentation of warrants properly indorsed, which have been advertised, pass an order directing the treasurer to pay them out of any money in the treasury

not otherwise appropriated.'' While this provision reads
''may,'' it should be read ''shall'' or ''must,'' as the rights
of relator depend upon the exercise of that duty. (*Montana
Ore Pur. Co.* v. *Lindsay,* 25 Mont. 24, 63 Pac. 715.) This
provision, therefore, provides a method for the re-establish-
ment in order of payment of such warrants as have been
called and not re-presented for payment.

The only penalty, therefore, under our law, for failure
[4] to re-present a warrant for payment during the sixty-
day period after first publication is the loss of interest there-
on; the warrant remains an obligation against the county.
True, it cannot thereafter be paid by the treasurer until
ordered to do so by the board of county commissioners,
but the holder is entitled to have such an order on proper
application and presentation. Relator attempted to take ad-
vantage of this right, but was denied the right by the board,
although the chairman and county attorney had promised
that such an order would be made.

3. The warrants were, then, valid obligations against the
county at the time relator acquired them, unless, as con-
tended by defendants, the fact that the Farmers' & Mer-
chants' State Bank held the warrants and at the same time
a deposit sufficient to cover the amounts represented thereby,
at the time of the first publication, operated as pay-
ment.

Counsel for defendants cite section 7579 Revised Codes
[5] of 1921, to the effect that ''everyone is responsible
\* \* \* for the result of his willful acts,'' and section
8593, which reads: ''A check must be presented for pay-
ment within a reasonable time after its issue, or the drawer
will be discharged from liability thereon to the extent of
the loss caused by the delay.'' They quote from *Greeley* v.
*Cascade County,* 22 Mont. 580, 57 Pac. 274, as follows: ''It
is difficult to perceive any reason why the plaintiff should
be heard to claim exemption from the obligation to make
due presentment of the check, or should be permitted to

escape the consequences of his neglect to do so. We are of the opinion that the same rule in that regard must be applied to the plaintiff, in his transaction with the county through its treasurer, as would be applicable in the ordinary case of a check-holder whose unreasonable delay in demanding payment of the bank results in loss or injury to the drawer." In that case the holder of a warrant had presented it to the treasurer and received in lieu thereof the treasurer's checks on the county depository bank. He held the check for a period of more than thirty days, when the bank failed and the county lost its deposit. The decision is not, therefore, controlling under the circumstances of this case; but, assuming that the rule applies to the failure to re-present a warrant after call, under all of the authorities the drawer is only discharged from liability to the extent of loss by reason of the negligent or willful act of the holder. That this is the rule is, in effect, conceded, as defendants contend that the county has suffered detriment to the extent of the amounts represented by the warrants by reason of the failure of the banks while the county had funds on deposit to pay the warrants. Had the Farmers' & Merchants' State Bank continued to hold the warrants during all of the period until the failure occurred, and continued to "control the time of presentment" by withholding the same, this contention might have merit. But in April, 1923, long before the failure of the banks, this relator presented his warrants and demanded payment, after being assured that his warrants "were subject to payment," and, being refused, requested and demanded that an order of the board be made directing the payment of the warrants out of any moneys available. Had the board then made the order as required by law, and had the treasurer, instead of "co-operating" with the banks, then issued his check to the relator, and at the same time seen to it that the banks furnished good and sufficient bonds for the protection of the funds on deposit, this condition could

not have arisen. By the action of the county officials, re-
lator was amply justified in proceeding as he did, and no
negligence can be attributed to him. Nor can the loss to
the county by reason of the failure of the banks be attributed
to such negligent or willful acts as were committed by the
officers of the Farmers' & Merchants' State Bank while it
held the warrants.

4. It is next contended that a banker has a lien upon
[6] funds on deposit, and that the Farmers' & Merchants'
Bank had authority to pay the warrants out of funds on
deposit with it at the time of the call, and that therefore,
in contemplation of law, there has been a payment of these
warrants. But there is no provision of law authorizing the
treasurer to direct presentment of registered warrants at
"the banks of the county," not to authorize a county de-
pository to pay warrants on such presentation; on the con-
trary, the provisions of the statutes on the subject clearly
negative such authority.

Sections 4753 and 4754 above provide the contents of the
notice, and section 4756 declares that "warrants drawn on
the treasury and properly attested are entitled to prefer-
ence as to payment * * * according to the priority of
time in which they were presented. The time of presenting
such warrants must be noted by the treasurer, and upon
receipts of moneys into the treasury not otherwise appropri-
ated, he must set apart the same, or so much thereof as is
necessary for the payment of such warrants."

All these requirements are directed to the treasurer; the
money is "set apart" in the treasury, not in the several
banks of the county, and, in order to secure payment, the
warrants must be presented to the proper custodian of
the county funds—the treasurer of the county—and pay-
ment made in cash or by check accepted by the holder of
the warrants. The warrants are directions to the treasurer
to pay, not orders on the bank, and the banks have no

authority to pay out county funds, to itself or another, without a check from the treasurer.

5. Complaint is made that the court ordered the payment of the "insect pest" warrant out of the general fund of the county. At the time these warrants were issued, the statute provided for the creation of an "insect pest fund" by the levy of a tax for that purpose. (Secs. 4501–4504, Rev. Codes 1921.) Chapter 25, Laws of 1923, amended sections 4503 and 4504, by providing that warrants for this purpose shall be drawn upon the general fund of the county, and further providing the method of reimbursing the general fund. While these warrants are drawn upon the "insect pest fund," in which it is admitted there is no money to pay the warrants, and which, by the amendment, has ceased to exist, we see no difficulty which might arise in following the order of the court in this respect.

Other assignments of error are made but not argued, and we find no merit in them.

No substantial error appearing in the record, the judgment is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK concur.

MR. CHIEF JUSTICE CALLAWAY, being absent on account of illness, did not hear the argument and takes no part in the foregoing decision.